**Balwinder SINGH, Petitioner,**

**v.**

**Andrea QUARANTILLO, District Director, Immigration and Naturalization Service, Respondent.**

**Balwinder Singh, Petitioner,**

**v.**

**Andrea Quarantillo, As District Director, Immigration & Naturalization Service, Respondent.**

**Nos. CIVA993414DRD, CIVA994480DRD.**

United States District Court, D. New Jersey.

April 5, 2000.

---

**3.** At oral argument, plaintiff's counsel consented to the dismissal of this claim.

Winston W. Fraser, Newark, NJ, Stanley H. Wallenstein, of Counsel, Pro Hac Vice, New York City, for Petitioner.

Robert J. Cleary, United States Attorney, By James B. Clark, III, Esq., Assistant United States Attorney, Newark, NJ, for Respondent.

## OPINION

DEBEVOISE, Senior District Judge.

Petitioner, Balwinder Singh, an alien in custody pursuant to an order of deportation, filed a petition and a supplemental petition for a writ of habeas corpus alleging that he is in custody in violation of the Constitution and laws of the United States.[1] The Immigration and Naturalization Service ("INS") responded, asserting that the court lacks jurisdiction to hear the case and, in any event, the petition lacks merit. The court has held hearings, at which additional facts were presented and arguments made.

The court has jurisdiction over this proceeding. By failing to timely process both a visa petition which petitioner's wife filed and petitioner's application for adjustment of immigration status, by denying petitioner's motion to reopen on erroneous legal grounds, and by failing to apply appropriate tolling to petitioner's voluntary departure date, the INS has deprived petitioner of a statutorily created right to a hearing to determine if his marriage was bona fide and to determine whether he is entitled to adjustment of his immigration status. Petitioner is being illegally detained. The writ will issue.

### A. The Factual and Procedural Background

Petitioner is a 24 year old native and citizen of India. He entered the United States without inspection on June 21, 1994. On July 19, 1995 deportation proceedings were commenced against him.

Petitioner applied for political asylum. Hearings were held before an Immigration Judge ("IJ") on the order to show cause for deportation and on the asylum application on November 1, 1995, December 6, 1995 and February 5, 1996. On February 5, 1996 the IJ issued an order denying asylum and withholding of deportation. He issued an alternate order of deportation, granting petitioner thirty days voluntary departure, stating in his oral opinion:

> I must also tell the respondent that if he fails to comply with my order, for a period of five years he will be ineligible for a certain type of relief and among those are additional periods of voluntary departure, adjustment of status under Section 244, 245 and 249 or any changes of nonimmigrant classifications under Section 248. And, finally, I must tell him that the only excuse for not complying with my decision is what the Act characterizes as exceptional circumstances

---

1. The Clerk's Office treated the petition and the supplemental petition as separate cases. They are in fact the same case and Civil Action No. 99–4480 will be consolidated with Civil Action No. 99–3414 for all purposes.

which refer mostly to his own grave illness or the death of an immediate relative in his family.

Petitioner appealed to the Board of Immigration Appeals ("BIA"). This resulted in an automatic stay of the IJ's order, and the voluntary departure time was tolled.

On October 2, 1997, while the appeal was pending petitioner married eighteen year old Elena Espinosa, a United States citizen. On November 7, 1997 Espinosa filed an I–130 visa petition on petitioner's behalf, and on the same date petitioner filed an application for adjustment of his immigration status based upon future approval of the I–130 visa petition. The adjustment he sought was from the status of a deportable alien who was granted voluntary departure to the status of a lawful permanent resident.

On June 11, 1998 the BIA dismissed petitioner's appeal from the IJ's order denying asylum and withholding of deportation, holding that the IJ correctly concluded that petitioner had not established his eligibility for either form of relief. The BIA further ordered that "[petitioner] is permitted to depart from the United States voluntarily within 30 days from this order——and in the event of a failure to so depart, [petitioner] shall be deported as provided in the Immigration Judge's order."

On August 3, 1998, pursuant to 8 C.F.R. § 3.2(c)(1), petitioner filed with the BIA a motion to reopen his deportation proceedings based upon his wife's November 7, 1997 I–130 visa petition and his application of the same date for adjustment of his immigration status. According to petitioner, under the applicable regulation "the adjustment application and the motion it supported were to be held in abeyance while the visa petition was being adjudicated." (Petitioner's Reply Memorandum at pp. 7, 8.) On January 13, 1999 the BIA denied the motion, stating "[t]he respondent has failed to demonstrate that he has an immigrant visa immediately available to him, since he has not provided a notice of approval for the visa petition allegedly filed for him by his United States citizen spouse. See 8 C.F.R. § 3.2(c)(1) (1998); see also Matter of Coelho, 20 I & N Dec. 464 (BIA 1992)." Petitioner's spouse had filed the I–130 visa petition on November 7, 1997, in conjunction with petitioner's petition for adjustment of status. Neither had been acted upon when petitioner filed his motion to reopen nor when the BIA denied the motion.

The effect of the legal principle upon which the BIA relied, i.e. automatic denial of a motion to reopen if the INS had not approved a visa petition, is to make the applicant's statutory right to a change of status based on marriage to a United States citizen wholly contingent upon prompt INS action upon the visa petition. Here the visa petition was filed in November 1997, two years before the hearings in this action. At those hearings the attorney for the government candidly admitted that because of its heavy case load it was impossible to predict when the INS would act upon the visa petition. This is remarkably casual treatment of a right which Congress has conferred.

In any event it appears that petitioner and his counsel did not receive notice of the January 13, 1999 decision until long after the time for appeal to the Court of Appeals had expired. The next communication from the INS that petitioner received was an April 27, 1999 letter directing him to surrender on May 27. On May 25 petitioner moved before the BIA to reconsider its order of January 13, 1999 and for a stay of deportation proceedings during the pendency of the motion to reconsider. He did not receive a ruling on his application for a stay.

Earlier in the deportation proceedings, after failure of petitioner to voluntarily depart within thirty days following the BIA's June 11, 1998 dismissal of his appeal from the IJ's denial of his asylum application, the INS obtained a warrant of deportation issued on July 10, 1998 requiring that petitioner be taken into custody. This

warrant was executed when petitioner was taken into custody on July 7, 1999.

The petition and supplemental petition for habeas relief were filed on July 21, 1999 and September 21, 1999, respectively. Petitioner challenges both the January 13, 1999 decision of the BIA and the warrant for deportation.

To facilitate an understanding of the discussion that follows, a chronological summary of the pertinent events is set forth at this point.

June 21, 1994 — Petitioner entered United States without inspection.

July 27, 1995 — INS placed petitioner in deportation proceedings. Petitioner applied for asylum.

Feb. 5, 1996 — IJ issued order denying asylum and denying withholding deportation. He issued alternative order of deportation granting 30 days voluntary departure.

Feb. 13, 1996 — Petitioner appealed to BIA.

Oct. 2, 1997 — Petitioner married Elena Espinosa.

Nov. 7, 1997 — Elena filed an I-130 visa petition with INS.

Nov. 7, 1997 — Petitioner filed application for adjustment of immigration status based on anticipated approval of I-130 petition.

June 11, 1998 — BIA dismissed petitioner's appeal from IJ decision of Feb. 5, 1996.

July 11, 1998 — Petitioner filed motion to reopen with BIA.

Jan. 13, 1999 — BIA denied motion to reopen on ground that it was not accompanied by a notice of approval of visa petition.

April 27, 1999 — Notice directed petitioner to surrender to INS custody on May 27.

May 25, 1999 — Petitioner moved BIA to reconsider order of Jan. 13, 1999. Petitioner applied by mail for stay during period of Reconsideration.

May 27, 1999 — INS notified petitioner it would rule on stay application on or before May 28, 1999.

July 7, 1999 — INS arrested petitioner.

July 21, 1999 — Petitioner's original petition was filed.

Sept. 21, 1999 — Petitioner's supplemental petition was filed.

## B. *Petitioner's Grounds for Relief*

Petitioner asserts that the court has habeas corpus jurisdiction under principles set forth in *Sandoval v. Reno,* 166 F.3d 225 (3d Cir.1999) and applied in *Velasquez v. Reno,* 37 F.Supp.2d 663 (D.N.J.1999).

In his original petition petitioner challenged the BIA's January 13, 1999 denial of his motion to reopen. He asserted that approval of the visa petition was not required and that the BIA's denial of his motion on the ground that such approval had not been obtained was error. Visa numbers are always available under the "immediate relative" classification pursuant to which the visa petition was filed in petitioner's case. According to petitioner the regulations required that his application for adjustment of status, filed simultaneously with the I-130 visa petition, should be held for processing pending action on the I-130 petition. 8 C.F.R. § 245.2(a)(2). By the same token the motion for reopening of deportation proceedings should have been held in abeyance.

Petitioner challenges the BIA decision in *In re H-A-,* Interim Decision 3394 (BIA 5/25/99). There the BIA, sitting en banc, held in a 9-7 ruling that motions based on marriages after deportation proceedings had commenced must be denied in the absence of an approved visa petition. This would be the case even in situations where time limitations might make it impossible for the motion to be accompanied by an approval. Petitioner urges that the court adopt the rationale of the 7 judge *H-A-* minority.

In his original petition petitioner challenges the failure of the INS to process and provide a hearing on the November 7, 1997 I-130 visa petition. This failure resulted in the absence of an approved petition, the basis of the BIA denial of the motion to reopen the deportation proceedings.

Finally, in his original petition petitioner invited a review of the circumstances of his July 7, 1999 arrest. He had applied for a stay of his May 27, 1999 deportation on May 25; he was advised by INS officials that a decision on the stay application would be made on or before May 28. No decision was communicated to petitioner and he was arrested on July 7, 1999.

In his supplemental petition petitioner alleged that he first became aware that the January 13, 1999 BIA decision was not the sole basis for his arrest by reading the INS's August 15, 1999 answer to his petition. From the answer he learned that the government relied on the June 11, 1998 BIA dismissal of the appeal from the

IJ's decision and alternate order of deportation permitting petitioner to depart voluntarily within thirty days of the order. It was pursuant to that order that (i) the July 10, 1998 warrant of deportation issued, (ii) by letter dated April 27, 1999 the INS directed petitioner to surrender for deportation on May 27, and (iii) petitioner was arrested on July 7, 1999.

Petitioner refers to 8 C.F.R. § 241.33(a)(1) which provides in part that "... once an order of deportation becomes final, an alien shall be taken into custody and the order shall be executed. For the purpose of this part, an order of deportation is final and subject to execution upon the date when any of the following occurs: (1) A grant of voluntary departure expires." It is petitioner's contention that the voluntary departure which was until July 11, 1998 had not "expired" when the INS entered the alternate order and issued the warrant against him on July 10, 1998. Petitioner further contends that his November 7, 1997 application for adjustment of his immigration status had a tolling effect which continued when his motion to reopen was filed on July 11, 1998. Thus, according to petitioner, the July 10, 1998 order of deportation and warrant were premature and unlawful.

### C. *Discussion*

1. *Jurisdiction:* The court's jurisdiction is controlled by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), enacted April 24, 1996, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–5461 (1996), enacted September 30, 1996, and by the Supreme Court and Third Circuit Court of Appeals decisions interpreting the AEDPA and IIRIRA.

The government in its answer to the original petition characterizes the June 11, 1998 order as "the final order of deportation." This case is different from *Sandoval v. Reno,* 166 F.3d 225 (3d Cir.1999) in that it does not involve deportation of an alien who is deportable because he had committed certain criminal offenses. It is different from *Sandoval* because the provisions of AEDPA and IIRIRA do not deprive the courts of appeal of jurisdiction to review final orders of deportation. The government contends that therefore the petition in this case must be dismissed because judicial review of the June 11, 1998 order was within the exclusive jurisdiction of the Court of Appeals for the Third Circuit. The defect in the government's argument is that petitioner is not challenging the June 11, 1998 order per se. He is challenging subsequent orders, actions and inactions of the INS which had the cumulative effect of depriving him of a statutory right.

Quite likely the January 13, 1999 order of the BIA could have been appealed to the Court of Appeals for the Third Circuit. However, petitioner and his counsel were unaware of that order until long after the time for appeal had expired. There were and are no other orders which petitioner could appeal to challenge his deportation in violation of his statutory rights, and the various agencies of the INS have blocked or denied relief, rendering petitioner's rights under 8 U.S.C. § 1255(e)(3) a nullity.

Were petitioner seeking simply to vacate execution of the warrant of removal, he might well be confronted with the jurisdictional bar of 8 U.S.C. § 1252(g):

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

*Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). The thrust of the petition in the present case is not an attack on the warrant for deportation and its execution. Rather it is an attack on the decisions and procedures of the INS which

have the effect, if not the purpose, of depriving petitioner of statutory rights. If these decisions and procedures are corrected there is no reason to believe that the Attorney General would execute the warrant of deportation.

It has been established in this circuit in *Sandoval v. Reno,* 166 F.3d 225 (3d Cir. 1999) and more recently in *Liang v. INS,* 206 F.3d 308 (3d Cir.2000) that neither the transitional rules nor the permanent rules promulgated under AEDPA and IIRIRA deprive district courts of habeas jurisdiction under 28 U.S.C. § 2241. The court has jurisdiction in the present case, therefore, to consider petitioner's claims.

■ **2. *Stay or Tolling of Departure Date:*** On February 5, 1996 the IJ issued an order denying asylum and denying withholding deportation. He issued an alternate order of deportation granting petitioner thirty days to voluntarily depart. In his oral opinion in compliance with the regulations, the IJ advised petitioner that if he failed to comply with "my order", for a period of five years he would "be ineligible for a certain type of relief and among those are additional periods of voluntary departure, adjustment of status under Sections 244, 245 and 249 or any changes of nonimmigrant classifications under Section 248."

On February 13, 1996 petitioner appealed to the BIA, which resulted in an automatic stay of the IJ's order and a tolling of his voluntary departure time. On October 2, 1997, while the appeal was pending, petitioner married Elena Espinosa, a United States citizen. On November 7, 1997 Espinosa filed an I–130 visa petition on petitioner's behalf, and petitioner filed an application for adjustment of his immigration status based upon anticipated approval of the I–130 visa petition.

On June 11, 1998 the BIA dismissed petitioner's appeal from the IJ's order denying asylum and withholding deportation, ordering that petitioner be permitted to voluntarily depart from the United States within 30 days from the date of the order,

or, in the event of failure to depart, face deportation.

Proceeding under 8 C.F.R. § 3.2(c)(1), on August 3, 1998 petitioner filed with the BIA a motion to reopen his deportation proceedings based upon his wife's November 7, 1997 I–130 visa petition and his application of the same date for adjustment of his immigration status. On January 13, 1999 the BIA denied the motion for the reason that his spouse's visa petition had not been approved and thus petitioner had not established that an immigrant visa was "immediately available to him." This state of affairs raises two issues: (i) whether, as petitioner contends, the October 14, 1997 adjustment application preserved the voluntary departure dates set forth in the February 5, 1996 order of the IJ and the June 11, 1998 order of the BIA affirming the decision of the IJ, and (ii) whether the BIA correctly applied the law when it denied petitioner's motion to reopen.

If the adjustment application did not toll the voluntary departure date, the deadline for petitioner's departure would have been July 11, 1998, thirty days after the June 11, 1998 decision of the BIA dismissing petitioner's appeal. If petitioner had departed it would have constituted an abandonment of the visa petition and application for adjustment. Absent tolling of the departure date, the consequences of failure to depart by the July 11 date were dire indeed.

Former Section 242b(e)(2) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1252b(e)(2), eliminated the availability of some forms of discretionary relief from deportation with respect to aliens who failed to comply with voluntary departure orders. The provision stated as follows:

(2) VOLUNTARY DEPARTURE -

(A) IN GENERAL—Subject to subparagraph (B), any alien allowed to depart voluntarily under section 244(e)(1) or who has agreed to depart·voluntarily at his own expense under section 242(b)(1)

who remains in the United States after the scheduled date of departure, other than because of exceptional circumstances, shall not be eligible for relief described in paragraph (5) for a period of 5 years after the scheduled date of departure or the date of unlawful reentry, respectively.

(B) WRITTEN AND ORAL NOTICE REQUIRED—Subparagraph (A) shall not apply to an alien allowed to depart voluntarily unless, before such departure, the Attorney General has provided written notice to the alien in English and Spanish and oral notice either in the alien's native language or in another language the alien understands of the consequences under subparagraph (A) of the alien's remaining in the United States after the scheduled date of departure, other than because of exceptional circumstances.

The relief from deportation described in the paragraph (5) referenced in the above language includes adjustment of status under Section 245 of the INA. *See* 8 U.S.C. § 1255; *see also Shaar v. I.N.S.,* 141 F.3d 953, 956 (9th Cir.1998) (finding that aliens who fail to voluntarily depart as they agreed are subject to the statute barring discretionary relief, including adjustment).

The government correctly notes that pursuant to 8 C.F.R. § 3.2(f) a motion to reopen does not stay the execution of a decision by the BIA, unless a stay of execution is specifically granted by the BIA, an immigration judge or an authorized officer of the INS. Thus, under the regulations petitioner's August 3, 1998 motion to reopen his deportation proceedings did not have the effect of staying his deportation. Petitioner, however, is relying not on his August 3, 1998 motion. Rather he relies on his November 7, 1997 application for adjustment of status based upon his wife's I–130 visa petition. This was filed during the period when the IJ's alternative order of deportation was stayed by reason of the appeal to the BIA, and it is petitioner's contention that "as he had made timely application to adjust his voluntary departure status, the voluntary departure time

did not expire *as a matter of law,* and his remaining here thereafter was lawful." (Petitioner's Reply Mem. at 15.)

To support this position petitioner relies upon GORDON, MAILMAN & YALE–LOEHR, IMMIGRATION LAW AND PROCEDURE, (rev.ed.) at § 51.01[1][a] and § 74.02[4][f], and he relies upon the en banc decision in *Contreras–Aragon v. INS,* 852 F.2d 1088 (9th Cir.1988).

The treatise states that "[d]uring the pendency of an application for adjustment the alien is generally authorized to remain in the United States and is ordinarily not considered 'illegally' or 'unlawfully' within this country." Chapter 51 at § 51.01[1][a]. This makes eminent sense, because if an alien does leave the country while an application to adjust is pending the adjustment application is deemed abandoned.

*Contreras–Aragon* can be applied to the present case by analogy. In that case the BIA's period of departure expired in thirty days; the time for appeal did not expire for six months; the alien appealed within the six months but after the expiration of thirty days. The court held that the voluntary departure period did not expire until after its affirmance of the deportation order.

Applying the rationale of *Contreras–Aragon,* petitioner and his spouse were accorded the right to make the November 7, 1997 applications. By virtue of 8 U.S.C. § 1154(a) Elena Espinosa was authorized to move for designation of petitioner to an immediate relative status under § 1151(b)(2)(A)(i). Petitioner was entitled to apply for adjustment of his immigration status based upon the anticipated approval of his spouse's application. Under 8 C.F.R. § 245.2(a)(2):

(2) *Proper filing of application—(i) Under section 245.* Before an application for adjustment of status under section 245 of the Act may be considered properly filed, a visa must be immediately available. If a visa would be immediately available upon approval of a

visa petition, the application will not be considered properly filed unless such petition has first been approved. If an immediate relative petition filed for classification under section 201(b)(2)(A)(i) of the Act or a preference petition filed for classification under section 203(a) of the Act is submitted simultaneously with the adjustment application, the adjustment application shall be retained for processing only if approval of the visa petition would make a visa immediately available at the time of filing the adjustment application. If the visa petition is subsequently approved, the date of filing the adjustment application shall be deemed to be the date on which the accompanying petition was filed.

"Citizens have a constitutionally protected statutory entitlement 'to submit and substantiate their marriage.' ... This entitlement is derived from the INA's definition of 'immediate relative' in section 201(b), 8 U.S.C. § 1151(b). ..." *Manwani v. U.S. Dept. of Justice, I.N.S.,* 736 F.Supp. 1367, 1381 (W.D.N.C.1990). The statute and regulations contemplate that the INS provide Espinosa and petitioner an opportunity to establish their entitlement to the relief they seek. Just as *Contreras–Aragon* mandated tolling a voluntary departure date to preserve the right to appeal, so mandated tolling is required in the present case to preserve Espinosa's and petitioner's statutory right to pursue a visa petition and adjustment of immigration status. By simply sitting on these applications (as the INS has done since November 1997) and failing to provide a hearing the INS has effectively deprived petitioner of any relief. Absent a tolling requirement there are serious due process concerns.

In these circumstances the departure date established in the BIA's June 11, 1998 order must be tolled in order to preserve petitioner's rights under 8 U.S.C. § 1255(e)(3).

**■ 3.** ***BIA's Denial of Motion to Reopen:*** Failing to apply tolling to petitioner's departure date had the effect of depriving him of a statutory right. Similarly the BIA's rule that a motion to reopen must be denied unless the visa petition had been approved deprived petitioner (and his United States spouse) of rights under 8 U.S.C. § 1255(e)(3).

As recited above the BIA summarily denied petitioner's motion to reopen for the single reason that he failed to demonstrate that he had an immigrant visa immediately available to him "since he has not provided a notice of approval for the visa petition allegedly filed for him by his United States citizen spouse." It is petitioner's contention that visa numbers are always available under the "immediate relative" classification, that the visa availability requirements were met by virtue of the fact that the visa petition and adjustment application were filed simultaneously: "If an immediate relative petition filed for classification under section 201(b)(2)(A)(i) of this Act or a preference petition filed for classification under section 203(a) of the Act is submitted simultaneously with the adjustment application, the adjustment application shall be retained for processing only if approval of the visa petition would make a visa immediately available at the time of filing the adjustment application. If the visa petition is subsequently approved, the date of filing the adjustment application shall be deemed to be the date on which the accompanying petition was filed." 8 C.F.R. § 245.2(a)(2).

Both the statute and the regulation are nullified unless the motion for adjustment is held in abeyance pending adjudication of the visa petition. Such nullification is the result of the ruling of the BIA in this case.

The BIA evidently relied upon its decision in *Matter of Arthur,* 20 I. & N. Dec. 475 (BIA 1992) in which it held that it would not grant motions to reopen for consideration of adjustment applications based upon unadjudicated visa petitions. The government in the present case relies upon *In re H–A–,* Interim Decision 3394 (BIA 5/25/99). There the BIA was asked to reconsider its ruling in *Matter of Ar-*

*thur.* A majority of nine members of the BIA held that the ruling in *Matter of Arthur* should be continued. This produced the absurd result that the BIA denied a motion to reopen based upon a timely but unapproved visa petition and then, when the visa petition was approved, denied reconsideration of the denial. The seven member minority dissented in a well reasoned opinion (in which the chairman joined) demonstrating that the majority opinion not only produced manifest injustice but also flouted Congressional intent.

In *H–A–* petitioner, a native of the Sudan, came to the United States in 1990 seeking asylum. The INS issued an order to show cause and notice of hearing in June 1993. His appeal from a denial of asylum was dismissed on September 7, 1995. On July 27, 1994 he married a United States citizen who filed a visa petition on his behalf on September 18, 1996. Simultaneously with the visa petition, petitioner filed an application for adjustment of status. On September 25, 1996 petitioner submitted a motion to reopen to adjust status. At that time, of course, the INS had not ruled on the visa petition. The deadline for filing the motion to reopen was September 30, 1996. On April 17, 1997 the BIA denied the motion under the policy set forth in *Matter of Arthur* which requires prior approval of marital visa petitions before reopening for adjustment of status cases subject to the marriage fraud provisions of 8 U.S.C. § 1154(g) and 8 U.S.C. § 1255(e). There followed petitioner's motion for reconsideration.

The Immigration Marriage Fraud Amendments of 1986, Pub.L. No. 99–639, 100 Stat. 3537, prohibited approval of visa petitions and adjustment applications based on marriages entered into while an alien was in proceedings. The obvious purpose was to eliminate fraudulent marriages as the means to avoid deportation. Recognizing that this absolute rule could have an unfair impact upon persons who married legitimately during the often lengthy period of INS proceedings, Congress amended the statute in 1990 to allow approval of such visa petitions and adjustment applications if the alien established by clear and convincing evidence that the marriage was bona fide.

In its decision denying reconsideration in the *H–A–* case, the BIA majority held that in order to implement the statutory marriage fraud provisions "motions to reopen for adjustment of status based upon unadjudicated visa petitions which fall within the ambit of sections 204(g) and 245(e) of the Act will not be granted." The majority opinion effectively prevents the movant for adjustment from relief after a visa petition is ultimately granted by application of reopening regulations. Subject to certain exceptions, a party may file only one motion to reopen and it must be filed within 90 days of the final administrative decision. It would be the rare case that the visa petition could be acted upon within that tight time frame.

The majority opinion, rather than implementing Congressional intent, subverts such intent. Congress removed the absolute bar to visa petitions on behalf of aliens who married after the institution of deportation proceedings. The BIA majority takes away that right. The minority opinion effectively destroys the rationale upon which the majority in *H–A–* relied. It sets forth a detailed history of the applicable statutory and regulatory provisions. On the basis of that history it concluded:

> The regulations at 8 C.F.R. §§ 245.1(c)(9)(iii)(F) and (iv) confer jurisdiction on the Immigration Court to at least consider prima facie evidence of a bona fide marriage for purposes of reopening. The regulation at 8 C.F.R. § 245.1(C)(9)(iii)(F) specifically states that the prohibition against adjustment of status on the basis of a marriage while in deportation proceedings does not apply if the alien establishes that the marriage is bona fide by providing clear and convincing evidence that the marriage was entered into in good faith. The regulation at 8 C.F.R. § 245.2(a)(2) permits simultaneous filing of the visa petition and adjustment application, and

under 8 C.F.R. § 245.2(a)(1) the Immigration Court has sole jurisdiction over adjustment applications after an alien is place in deportation proceedings.

. . . . .

To deny reopening because the Service has not completed its adjudication of the visa petition, as the majority insists must be done, and then deny reconsideration of the denial after the Service approves the visa petition defeats the purpose of the regulations that allow for a United States citizen to file a simultaneous visa petition on behalf of a spouse. The record reflects that the Service did not oppose the motion to reopen and has not opposed the respondent's motion to reconsider. Why conclusively presume otherwise? The majority also disregards the authority of this Board and of the Immigration Judges to adjudicate whether a respondent is a party to a bona fide marriage under the regulations. No legitimate governmental interest is furthered by effectively precluding a forum to spouses of United States citizens who submit a visa petition within the strict limits prescribed by the regulations. It is only that result that is accomplished by the majority's disposition of this matter.

. . . . .

Absent individual adverse factors we can not invoke discretion to deprive a class of eligible applicants of the sole forum prescribed by the regulations and section 245(e)(3) of the Act for consideration of their bona fide marriages. See 8 C.F.R. §§ 245.1(c)(9)(iii)(F), (iv); 245.2(a)(1), (2). It is well settled that the Attorney General from whom we derive our authority can not disregard the procedure prescribed by the regulations as they have the force of law. *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *In re Ponce De Leon–Ruiz,* Interim Decision 3261 (BIA 1996). In determining whether to exercise our delegated power under 8 C.F.R. § 3.2(a)(2), we should apply the test pre-scribed in *Mathews v. Eldridge,* 424 U.S. 319, 335, [96 S.Ct. 893, 47 L.Ed.2d 18] (1976), which takes into account three factors: the interest at stake for the individual; the risk of erroneous deprivation of that interest; and the Government's administrative burden. See *Padilla–Agustin v. INS,* 21 F.3d 970 (9th Cir.1994); *Hernandez [\*45] v. Cremer,* 913 F.2d 230 (5th Cir.1990); *Haitian Refugee Center, Inc. v. Nelson,* 872 F.2d 1555 (11th Cir.1989), aff'd. sub nom *McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479, [111 S.Ct. 888, 112 L.Ed.2d 1005] (1991). Here the fundamental nature of the marital relationship being threatened by our failure to provide a forum, and the reduced administrative burden entailed in proceedings likely to result in the prompt and fair resolution of the respondent's status favor reopening.

The minority opinion in *H–A–* sets forth a correct statement of the law which will be applied in the present case. It follows that the BIA's January 13, 1999 ruling denying petitioner's motion to reopen on the ground that it was not accompanied by a notice of approval of Espinosa's visa petition was erroneous as a matter of law. Unfortunately petitioner did not receive notice of that ruling until long after the time for appeal had expired.

It will be recalled that on June 11, 1998 the BIA dismissed an appeal of the IJ's decision and, with an alternate order of deportation permitted petitioner to depart from the United States voluntarily within thirty days of the date of its order. Because petitioner had failed to depart from the United States voluntarily within thirty days following the BIA's June 11 decision, a warrant of deportation issued on July 10, 1998. No action was taken on the warrant until after the January 13, 1999 decision of the BIA denying petitioner's motion to reopen. That (erroneous) decision triggered execution of the warrant and petitioner's arrest on July 7, 1999.

8 C.F.R. § 241.33(a) governs execution of a warrant of deportation. It provides that "once an order of deportation becomes final, an alien shall be taken into custody and the order shall be executed." The regulation specifies that an order of deportation is final and subject to execution when "[a] grant of voluntary departure expires." In the present case, as noted above, the departure date established in the June 11, 1998 BIA order was tolled by virtue of the November 7, 1997 filing of the visa petition and petition for adjustment of immigration status. The BIA's erroneous January 13, 1999 denial of the motion did not break the tolling effect, and petitioner is being unlawfully detained.

## D. *Conclusion*

The writ will issue, restoring petitioner's liberty until the INS has provided a hearing and ruled on the visa petition and the application for adjustment of immigration status and until the BIA, after receiving said rulings, has heard petitioner's motion to reopen.

An order will issue implementing the foregoing.