**Aminah RICKS, Plaintiff–Appellant,**

v.

**CONDE NAST PUBLICATIONS, INC., Alexandra Golinkin, Julie Krumholz, and Wendy Cohen, Defendants–Appellees.**

No. 00–7679.

United States Court of Appeals, Second Circuit.

March 20, 2001.

Sandra D. Parker, Winston & Parker, New York, NY, for appellant.

Domenique Camacho, Littler & Mendelson, P.C., New York, NY, for appellee.

Present SACK, SOTOMAYOR, and KATZMAN, Circuit Judges.

SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court be, and it hereby is, AFFIRMED.

Plaintiff-appellant Aminah Ricks appeals the judgment of the United States District Court for the Southern District of New York (Sweet, *J.* ) granting summary judgment to the defendants pursuant to Fed. R.Civ.P. 56.

We review the district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the appellant, who was the non-moving party below. *See Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir.1999), *cert. denied*, 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000).

Ricks, an African–American woman, worked for three months in 1997 as an advertising account manager for *Allure* magazine, which is owned by defendant-appellee Conde Nast Publications, Inc. Ricks asserts that she was subjected to racially-motivated abuse throughout· her tenure. For example, she claims that one of her supervisors, defendant Julie Krumholz, verbally berated her on at least two occasions, that Wendy Cohen, another supervisor, "publicly humiliated" Ricks and "hit" her on the shoulder, and that defendant Alexandra Golinkin, *Allure's* publisher, stated at a staff meeting that Ricks's hair was "different from the hair of white people." Ricks also claims that Conde Nast refused to pay her commissions during the year she was hired, but did pay commissions to at least one white co-worker hired the same year.

Ricks' supervisors reprimanded her for several errors and gave her increasingly negative performance reviews. Among other things, Ricks allegedly scheduled

meetings with a client who no longer advertised in print, scheduled and prepared Cohen for a meeting with the wrong person and regarding the wrong account, and drafted a letter offering an unnecessary premium to an advertiser. Krumholz also stated in a deposition that during at least two sales calls, Ricks failed to effectively "articulate the magazine's editorial mission and the buying power of its readers."

Concerned with her performance, Cohen and Krumholz asked Ricks in August 1997 to prepare a "working agreement" setting forth her goals and a plan for meeting them. Ricks did prepare a draft, but never received feedback, never prepared a final agreement, and did not follow through on several of the goals outlined in the draft. Cohen also asked Ricks to update her account book, although Ricks claims that Cohen required her to use an overly detailed format. Ricks never completed the project.

Despite two written warnings from her supervisors that she would be fired unless her performance improved, Ricks' troubles continued. Among other things, she gave a mock sales presentation that Golinkin thought to be inaccurate and poorly delivered, failed to deliver a follow-up presentation as requested, and was the only account manager who failed to complete a project assigned by Golinkin on time. She also failed to completely update her account book and made errors even in those portions she did update, and continued to make errors in client correspondence. Golinkin fired Ricks on October 14, 1997.

Ricks filed suit under Title VII and 42 U.S.C. § 1981, alleging she had been subjected to discriminatory and retaliatory discharge and a hostile work environment. The district court (Robert W. Sweet, *Judge* ) granted the defendants' motion for summary judgment in an opinion dated April 25, 2000. *See Ricks v. Conde Nast,* 92 F.Supp.2d 338 (S.D.N.Y.2000). On appeal, Ricks asserts that the district court erred in dismissing her Title VII discrimination and hostile environment claims.

To defeat a motion for summary judgment on a claim of discriminatory discharge under Title VII, a plaintiff must first establish a *prima facie* case by showing (1) that she was a member of a protected class, (2) that she was performing her duties satisfactorily, (3) that she was discharged, and (4) that her discharge occurred in circumstances giving rise to an inference of discrimination. *See McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir. 1997); *see also Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000). If the plaintiff makes out a *prima facie* case, the employer has the burden of articulating "a legitimate, nondiscriminatory reason" for the discharge. *Reeves,* 120 S.Ct. at 2106. If the defendant does so, the plaintiff must "prove by a preponderance of the evidence ... that the employer's proffered explanation is unworthy of credence." *Id.* (internal quotation marks omitted).

■ The district court concluded that Ricks had failed to establish a *prima facie* case of discriminatory discharge under this standard, and held in the alternative that "Conde Nast has articulated a legitimate reason for firing her which Ricks is unable to rebut." *Ricks,* 92 F.Supp.2d at 345. Because we agree with that the latter determination, we need not rule on the adequacy of Ricks' *prima facie* case.

■ The reason offered by the defendants for Ricks' termination—that her performance was inadequate—is legitimate, non-discriminatory, and well supported in the record. To rebut this showing, Ricks first alleges that the defendants' failed to give her formal training or tell her how to

pitch the magazine to potential advertisers. It is undisputed, however, that her supervisors gave her sample letters and sales presentations, accompanied her on a number of sales calls, and met with her at least weekly in the first month of her employment. Ricks also claims that the defendants' assessment of her work was simply inaccurate. But the record amply supports the defendants' view, and in any event an employee's disagreement with her employer's evaluation of her performance is insufficient to establish discriminatory intent. *See, e.g., Billet v. CIGNA Corp.,* 940 F.2d 812, 825 (3d Cir.1991), *overruled in part on other grounds by St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Taylor v. Polygram Records,* No. 94 Civ. 7689, 1999 WL 124456, at *10 (S.D.N.Y. Mar. 8, 1999); *Reilly v. Metro–North Commuter R.R. Co.,* No. 93 Civ. 7317, 1996 WL 665620, at *9 (S.D.N.Y. Nov. 15, 1996).

■ Ricks next contends that the standards used to evaluate her performance were entirely subjective and applied in a discriminatory manner. Conde Nast concedes that it had no written performance standards. While purely subjective criteria may contribute to a finding of intentional discrimination, the absence of objective criteria does not, without more, show discriminatory intent. *See Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 990–91, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). We judge whether a plaintiff's performance is satisfactory according to "the employer's honestly-held expectations," *Thornley v. Penton Publishing, Inc.,* 104 F.3d 26, 30 (2d Cir.1997), and "not the standards that may seem reasonable to the jury or judge," *id.* at 29. None of Ricks' examples of inconsistent and discriminatory performance standards withstand scrutiny. For instance, she claims

that two other "poor performing, caucasian account managers" were not required to prepare working agreements. Plaintiff's mem. at 6. But the record shows that those two employees, like Ricks, were fired, and that Conde Nast did require working agreements in at least two other instances. Ricks also asserts that white account managers were not required to maintain their account books in a prescribed format and were not given written performance evaluations. But she offers no evidence that other employees made the sorts of mistakes that prompted Conde Nast to scrutinize her work more closely. In other words, Ricks failed to show that she was "similarly situated in all material respects" to those with whom she compares herself. *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir.1997).

■ As further evidence of discriminatory intent, Ricks alleges that she was denied the chance to earn commissions during the year in which she was hired, while a white employee named Wirth, who was hired after Ricks, did receive commissions for that year. The record indicates a legitimate, non-discriminatory reason for this discrepancy: Wirth was hired as a "Beauty Advertising Director," while Ricks was an account manager. In any event, we agree with the district court that the difference in compensation "does not push her discriminatory termination claim over its evidentiary hurdle." *Ricks,* 92 F.Supp.2d at 346, n. 2.

■ Perhaps most damaging to any inference of discriminatory intent is the fact that Golinkin was partly responsible both for hiring Ricks and for firing her just a few months later. *See Grady v. Affiliated Central, Inc.,* 130 F.3d 553, 560 (2d Cir. 1997). It seems unlikely that she would hire an African American only to fire her shortly thereafter because she is an African American.

We also affirm the dismissal of Ricks' hostile environment claim. An employer is liable under Title VII for allowing a work environment to become "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations and internal quotation marks omitted). The plaintiff also must show that the working environment is not merely hostile or abusive, "but actually constituted 'discrimina[tion] ... because of ... [race].'" *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (first alteration in original; citation omitted).

The record demonstrates four specific acts of offensive conduct towards Ricks: two instance in which Krumholz verbally berated her; Cohen's "public humiliation" of her and hitting her on the shoulder; and Golinkin's comment to the effect that Ricks's hair was "different from the hair of white people." With the exception of the final comment, there is no indication that any of this conduct was at all related to her race. Golinkin's statement about Ricks' hair does make this a closer call. We have recognized that "[p]erhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet ... by a supervisor in the presence of [her] subordinates." *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 439 (2d Cir.1999) (internal quotation marks omitted). But Ricks does not remember when the comment was made or what exactly was said; she remembers only that it was her "impression" that the comment was related to

her race. We agree with the district court that Golinkin's statement alone does not "satisfy the requirements of Title VII as to severity or pervasiveness." *Ricks*, 92 F.Supp.2d at 348, n. 4. Even taken together the alleged instances of abuse were neither discriminatory nor "sufficiently continuous and concerted" to constitute a hostile environment for Title VII purposes. *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997) (internal quotation marks omitted).

For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED.