Judge PARKER concurs in part and dissents in part in a separate opinion.
BARRINGTON D. PARKER, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s affirmance of the dismissal of Kwan’s gender and national origin discrimination, hostile work environment, and COBRA claims. I would affirm the dismissal of her federal retaliation claim as well. District Judge Katherine B. Forrest concluded after a thorough and careful review that “no rational juror could find.for the plaintiff in this case after comparing the overwhelming facts in the record supportive of legitimate business reasons for plaintiffs termination with what may only be characterized as cobbled together conduct allegedly supportive of ... retaliation.” In my view, she was correct.
I will assume for the moment that Kwan established a prima facie case of retaliation, and that Andalex proffered legitimate, performance-based reasons for her termination. As the majority notes, at that point, Kwan was obligated to come forward with sufficient evidence on the basis of which a reasonable jury could find that Andalex’s performance-based reasons were pretextual. See Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir.2000). In other words, evidence that would permit a reasonable jury to find that she engaged in a protected activity, and that the activity, as opposed to the reasons proffered by Andalex, led to her termination. The bar is even higher in the wake of Nassar, as Kwan must now ad *850 duce facts sufficient to allow a reasonable trier of fact to find that retaliation was the “but for” cause of her termination. Univ. Of Tx. Sw. Med. Ctr. v. Nassar, — U.S. -, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013).[1] Kwan failed to carry this burden.
The majority opinion hangs by a slender factual thread — that Kwan purports to have complained to Alex Silverman that she was being discriminated against, that she was fired three weeks later, and that her employer gave multiple reasons for her termination. Because more than one reason was offered, the majority concludes that Andalex’s reasons were necessarily pretextual. The problem with this analysis is that it obscures the failure of proof on Kwan’s part that the myriad performance-based reasons for her discharge were “mere pretext for actual [retaliation],” Weinstock, 224 F.3d at 42, and that this supposed retaliation was the “but for” cause of her termination, Nassar, 133 S.Ct. at 2533.
Even accepting, for the purposes of argument, that Kwan has established that Andalex offered differing and thus apparently pretextual explanations for her termination, summary judgment would still be appropriate. As we explained in Schnabel v. Abramson, even where a plaintiff has demonstrated pretext, rather than simply applying a per se rule precluding summary judgment for the defendant, we must instead employ a “case-by-case approach” and “examin[e] the entire record to determine whether the plaintiff could satisfy h[er] ‘ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.’” 232 F.3d 83, 90 (2d Cir.2000) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal quotation marks omitted)). While Schnabel dealt with an age discrimination claim, this approach applies to retaliation claims as well. In conducting this “case-by-case” analysis, “[t]he relevant factors ... ‘include the strength of the plaintiffs prima facie case, the probative value of the proof that the employer’s explanation is false, and any other evidence that supports [or undermines] the employer’s case.’ ” James v. N.Y. Racing Ass’n, 233 F.3d 149, 156 (2d Cir.2000) (third alteration in original) (quoting Reeves, 530 U.S. at 148-49, 120 S.Ct. 2097).
First, Kwan’s prima facie case was particularly weak. To establish a prima facie case of retaliation under Title VII, she was obligated to demonstrate that: (1) she was engaged in an activity protected under Title VII; (2) her employer was aware of her participation in the protected activity; (3) the employer took adverse action against her; and (4) a causal connection existed between the protected activity and the adverse action. See Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir.2000) (quoting Cosgrove v. Sears, Roebuck & Co., 9 F.3d 1033, 1039 (2d Cir. 1993)).
Kwan addressed the knowledge and causation prongs in the most minimal way possible, relying exclusively on the legal fiction of general corporate knowledge and on a temporal proximity between her complaint and her discharge. Notably, she *851 failed to even allege, much less proffer evidence after taking extensive discovery, that the complaint she purportedly made to Alex Silverman was actually communicated to or known by the executives who terminated her, Andrew Silverman and Gregory Marks. This critical factual omission is telling.
Moreover, the probative value of her proof of pretext was minimal. As discussed below, Andalex consistently relied on the same facts and events justifying Kwan’s termination at each stage of the proceedings. There is no evidence that Andalex shifted its position for strategic reasons because, for example, new evidence undermined a prior asserted justification, see Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137 (2d Cir.2000); EEOC v. Ethan Allen, 44 F.3d 116, 120 (2d Cir.1994). To the extent its position has shifted at all (and I would find, for the reasons discussed below, that it has not), that shift merely reflected a change in the description it applied to a consistent set of facts.
In any event, Andalex presented ample evidence of legitimate, non-retaliatory reasons for its termination of Kwan. Andalex established that, consistent with their shift in business strategy, another employee who held a similar position, but also lacked the skills and experiences Andalex was seeking, was terminated three days before Kwan. In addition, Andalex demonstrated that Kwan was replaced by a woman with the Spanish language skills that Kwan lacked.
In addition, Andalex documented a host of performance based reasons why Kwan was fired. For example, in December 2007, in connection with a casino acquisition project in Argentina, Marks asked Kwan to prepare a financial model over the weekend so that it could be checked Monday morning in preparation for a business trip that evening. Kwan avoided working over the weekend and claimed that she needed help translating the Spanish-language documents. Although another employee, fluent in Spanish, offered to help Kwan complete the work- on Sunday, she declined. Kwan began work on the model on Monday morning, and was unable to complete the assignment in a timely fashion, forcing the executives to travel without the model.
In October 2007, Kwan was asked to update a financial model for a pending deal by adding and removing certain projected acquisitions. Marks found numerous errors in Kwan’s work product and was forced to assign the project to a more junior analyst to be completed properly. Kwan does not deny that the incident occurred, but only denies that she was ever told of this incident.
In September 2008, Marks asked Kwan to prepare a financial projection for a deal involving the acquisition of a chain of Mexican casinos. Kwan- made errors in the model that led to grossly overstated losses. After a potential investor noticed the mistake and contacted Andrew Silverman to ask why Andalex was recommending an investment that was projected to have a significant loss,-Marks -and another employee were forced to redo Kwan’s work and to suffer the obvious embarrassment to the company’s reputation. In response, Kwan denies that she was ever told she had made “errors,” and argues that Marks and the other employee merely were “simplifying” the formulae, rather than redoing her work..
In his deposition, Andrew Silverman noted that he received feedback from other -employees that Kwan had conducted herself in an unprofessional manner during several business meetings, including inappropriately taking photos of Marks on two occasions. Further, at the end of her employment Kwan was taking long lunches *852 and leaving the office early even when work remained unfinished. As a result, Marks required Kwan to let him know before she left so that he could make sure there was no additional work that needed to be completed, but she regularly failed to do so. On the day before her termination, Marks observed Kwan leaving the office around 5:00 p.m. even though she had a looming deadline.
Kwan denies taking long lunches, and provides a different explanation for leaving early the day before her termination and avers that she was a competent employee. However, her subjective disagreement with her employer’s assessment of her performance is not sufficient to demonstrate retaliatory intent and defeat summary judgement. Ricks v. Conde Nast Publ’ns, 6 Fed.Appx. 74, 78 (2d Cir.2001) (summary order); see also Stern v. Trustees of Columbia Univ. in City of New York, 131 F.3d 305, 315 (2d Cir.1997) (“ ‘This court does not sit as a super-personnel department that reexamines an entity’s business decisions.’ ”) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986)). In any event, in light of this abundance of largely unrefuted evidence of poor performance, no reasonable trier of fact could conclude that retaliation was the “but for” reason for Kwan’s termination.
But we need not even reach the foregoing analysis, however, as I would find that Kwan has neither demonstrated that An-dalex shifted positions, nor, as a result, pretext. The majority finds that she has done so by characterizing Andalex’s position as shifting between its Position Statement in the Equal Employment Opportunity Commission (“EEOC”) proceedings and this lawsuit. As our precedent recognizes, however, it is not uncommon for an employer to have multiple reasons for terminating an employee, and we have held that where the employer offers “variations ... on the same theme rather than separate inconsistent justifications,” there is not sufficient evidence of pretext to preclude the entry of summary judgment. Roge v. NYP Holdings, Inc., 257 F.3d 164, 170 (2d Cir.2001); see also Timothy v. Our Lady of Mercy Med. Ctr., 233 Fed.Appx. 17, 20 (2d Cir.2007).
In Roge, after the employer cited, among other things, the lack of work for the plaintiff-employee and its own business restructuring as reasons for the employee’s termination, the employee argued that those two reasons were inconsistent and thus pretextual. 257 F.3d at 169-70. We disagreed, finding that the business restructuring was motivated by the lack of work, and thus that these two explanations were “variations ... on the same theme.” Id. at 170. Similarly, in Timothy, we found that the employer’s ■ various and shifting justifications for an employee’s repeated reassignments were not pretextual because they “share[d] a consistent theme of a[n employer] facing the double bind of a severe labor shortage and desperate financial straits that is trying to deal with this terrible situation through reorganization and reassignments.” 233 Fed.Appx. at 20.
Rather than “inconsistent explanations,” as the majority asserts, Andalex has offered complementary justifications for Kwan’s discharge: a shift in the company’s business focus as well as her poor performance — that are part of the same theme and which support her termination. These rationales, and the key facts supporting them, are consistently reflected in Andalex’s submissions.
In a pre-litigatio.n letter, Andalex relied not only on the fact that its “business shifted,” but also on Kwan’s poor performance to justify her termination. Andalex explained that as a result of the shift in business focus Kwan’s “skill set became *853 increasingly obsolete,” and that “[Kwan] repeatedly took long lunches, arrived to the office late, left early, and generally made little effort to make herself valuable to the company as its business focus changed.”
Similarly, in Andalex’s Position Statement before the EEOC, it explained that its “business changed dramatically,” that “[Kwan’s] skill set no longer matched the needs” of the company, and that “she had failed and had been unable to make the transition to the foreign hospitality and gaming aspect of the business operation,” as evidenced by Andrew Silverman’s recollection of “several instances in which [her] work product contained significant errors, which in at least one case adversely affected a transaction being negotiated with a global financial institution.” The EEOC Position Statement also recounted the instances where Kwan had inappropriately photographed Marks during business meetings, as well as her “long lunches” and penchant for “leaving the office early” in violation of Marks’ requirement that he first check in with him, including the specific instance on the day before she was terminated.
The majority’s narrow focus on a single answer Marks gave in his deposition, disputing that Kwan was fired due to the business shift, ignores the other facts that Marks relied upon. Like both Andalex’s pre-litigation letter and EEOC Position Statement, Marks’s deposition testimony described a number of specific projects in which Kwan had performed poorly, both in the quality of her work, and her unwillingness or inability to complete her work in a timely fashion. The fact that in one answer Marks characterized these events as strictly performance problems does not change the reality that Andalex and its executives have advanced the same facts justifying Kwan’s termination throughout these proceedings.
In its summary judgment brief, Andalex also relied upon these same facts to support its argument that the combination of the company’s'shifting business focus and Kwan’s poor performance justified her termination. In the brief, Andalex explained that the decision to terminate Kwan was “a culmination of ongoing issues that were brought to [its] attention by a number of people regarding the quality and accuracy of Kwan’s work product, the level of her performance, and her attitude.”- The brief reviewed the instances where Kwan’s work was deficient or late to the detriment of the company, and where she resisted working the hours necessary to finish her work before deadlines, or left the office early despite pressing responsibilities.
Further, there is no evidence that Anda-lex ever altered its rationale because new evidence undermined a previously asserted justification for her discharge, see Carlton, 202 F.3d at 137, and Ethan Allen, 44 F.3d at 120, nor does the record establish that the allegedly shifting reasons Andalex has asserted are in fact contradictory. Rather, the shift in business focus and Kwan’s poor performance are complementary — indeed the shift in focus may in fact be a cause of at least some of Kwan’s performance problems. Therefore, to the extent one or the other is more heavily emphasized at times, that does not mean that they are not part of a consistent theme. Consequently, Kwan failed to demonstrate that Andalex shifted its positions, let alone that such a shift rendered its proffered, legitimate reasons for her termination pretextual.
The only remaining evidence of pretext offered by Kwan is the temporal proximity of her alleged complaint and her termination. We have, however, repeatedly held that temporal proximity alone is insufficient as a matter of law to defeat *854 summary judgment. See, e.g., El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir.2010) (affirming district court’s grant of summary judgment to defendant where plaintiff relied only upon temporal proximity and made, no showing of pretext). Whatever modest probative value temporal proximity might have in this case is washed away by the facts that Plaintiff did not offer any evidence to suggest that the decision-makers who fired her knew about the complaints she allegedly made and that Plaintiff did not produce any evidence to undermine Andalex’s position that her performance was demonstrably poor and incompatible with its shift in business focus.
CONCLUSION
I would affirm the judgment of the district court in its entirety.

. The “but for” causation standard would apply to Kwan's Title. VII and NYSHRL claims, but not to her retaliation claims under the NYCHRL. See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 116 (2d Cir.2013) (explaining that under the NYCHRL "summary judgment is appropriate only if the plaintiff cannot show that retaliation played any part in the employer's decision.”). I decline to address Kwan's claims under the NYCHRL, because in the absence of a viable federal claim, I would decline to exercise supplemental jurisdiction over any remaining state or city .law claims. 28 U.S.C. § 1367.