Aubrey C. **LEWIS**, Jr., Plaintiff,

v.

**UNITED AIR LINES, INC.**, Defendant.

No. Civ.A. 99–1741.

United States District Court,
D. New Jersey.

Sept. 28, 2000.

---

Jacques Catafago, Catafago Law Firm, P.C., New York City, NY, for plaintiff Aubrey C. Lewis, Jr.

Robert S. Raymar, Hellring, Lindeman, Goldstein & Siegal, Newark, NJ, for defendant, United Air Lines, Inc.

## OPINION & ORDER

HOCHBERG, District Judge.

This matter comes before the Court on the Motion to Dismiss of Defendant United Air Lines, Inc., pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). Having reviewed the submissions of the parties without oral argument, pursuant to Fed.R.Civ.P. 78, and for the following reasons, this Court will grant Defendant's Motion to Dismiss.

### STATEMENT OF FACTS

Plaintiff Aubrey Lewis, an African–American contractor, was the President and sole shareholder of Lewis Contracting Corporation, Inc. (hereinafter "LLC"). LLC was a successful and competitive certified Minority Business Enterprise ("MBE"). To qualify for MBE status, a

program designed to promote minority persons and companies, a company must have at least 51% minority ownership.

In November 1993, LLC was the successful low bidder on a construction project managed by defendant United Air Lines, Inc. (hereinafter "Defendant" or "United") and funded by the Port Authority at the Newark International Airport. The contract completion date was March 20, 1994 and the original contract price for the project was over $1,500,000. However, excessive change orders, allegedly due to poor planning by Defendant's management, inflated the final contract price to $2,100,000.

Months after the contract was awarded, LLC was required to obtain a performance bond for the cost of the project. Plaintiff procured the bond and Westchester Fire Insurance Company issued the bond on June 9, 1994. Plaintiff asserts that the requirement to post a bond discriminated against Plaintiff because non-minority contractors were not required to secure such bonds for similar projects.

Plaintiff also asserts that Defendant's Senior Project Manager, Norman Fischer (hereinafter "Fischer"), made repeated discriminatory and derogatory comments to and about Plaintiff because of his race. Specifically, Fischer made it clear to Plaintiff that he did not like people of color, made racist comments to Plaintiff and blamed LLC for the problems concerning the project awarded to LLC. On one occasion, Fischer asked Plaintiff, "Why do colored people find so many excuses for their performance?" On another occasion, Fischer stated, "Why do colored people always want preferential treatment?" On January 8, 1995, Plaintiff wrote a letter to Fischer expressing his concern about the racist and disparaging remarks made about Plaintiff and LLC.

Plaintiff also asserts that Fischer disparaged him in front of his peers, potential employers and other United workers by circulating a letter dated February 7, 1995, which discussed the agenda for an upcoming meeting. Item No. 7 on that agenda was to provide "a method to allow for additional fees due to delays by contractors Lewis and McGriff." Both referenced contractors were African–American. Fischer was reprimanded by an employee of the Port Authority, who stated that Fischer's comment implied that MBE contractors are incompetent and cause delays and requested that Fischer correct the agenda.

In a letter to LCC dated February 22, 1995, Fischer informed Plaintiff that Fischer had learned that LLC was downsizing and that, as a result, LLC would be removed from Defendant's General Contractor bid list. On February 24, 1995, Plaintiff's counsel responded by letter, informing Fischer that he was mistaken and LLC was continuing its rapid expansion. The letter from Plaintiff's counsel also put Fischer and Defendant on notice that Plaintiff was aware of certain letters to and from Fischer concerning LLC's performance. Plaintiff's counsel stated that counsel intended to look further into Fischer's communications concerning Plaintiff and LLC.

On March 10, 1995 Fischer responded to the letter from Plaintiff's counsel, stating that he had been misinformed and that LLC had remained and would continue to remain on Defendant's bid list.

Plaintiff contends that Fischer's February 22, 1995 letter was a pretext for discriminating against Plaintiff by removing Plaintiff's company from Defendant's bid list, thereby preventing Plaintiff from bidding on lucrative contracts. Plaintiff further asserts that, to date, he has not received a single invitation to bid on another project with United Air Lines, despite Defendant having accepted dozens of bids for similar contracts since March 10, 1995. Plaintiff completed the change orders on the original project in or about May 1997.

### PROCEDURE

On April 15, 1999, Plaintiff filed a complaint in this Court. At the time Plaintiff

appeared *pro se*. On September 7, 1999, after Defendant filed a motion to dismiss the case, Plaintiff, who had hired counsel, amended his complaint (hereinafter the "Amended Complaint"), alleging violation of his civil rights under 42 U.S.C. § 1981, tortious interference and breach of contract.

Defendant now moves to dismiss the Amended Complaint in its entirety, pursuant to Fed.R.Civ.P. 12(b)(6) and 12(b)(1) for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction, respectively. For the reasons set forth below, Defendant's motion is granted.

## DISCUSSION

### I. *Standard of Review*

#### A. *Standard of Review of a Fed. R.Civ.P. 12(b)(6) Motion to Dismiss*

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents that the plaintiff's claims are based upon. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994); *see also In re Donald J. Trump Casino Securities Lit.*, 7 F.3d 357, 368 n. 9 (3d Cir. 1993); *cert. denied, sub nom., Gollomp v. Trump*, 510 U.S. 1178, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). Motions to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a cause of action result in a determination on the merits at an early stage of a plaintiff's case. *See Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977). As a result, "plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn." *Id.* In order to grant a 12(b)(6) motion to dismiss, the court must find that the plaintiff will be unable to prevail even if plaintiff proves all the allegations in the complaint. The court's decision must be based solely on the legal sufficiency of the complaint. *See id.*

#### B. *Standard of Review of a Fed. R.Civ.P. 12(b)(1) Motion to Dismiss*

In evaluating a motion to dismiss under 12(b)(1) for lack of subject matter jurisdiction, the Court must first determine whether defendant's motion attacks the complaint as deficient on its face, or whether defendant's motion attacks the existence of subject matter jurisdiction in fact. *Mortensen*, 549 F.2d at 891. Where defendant's 12(b)(1) motion facially attacks the complaint, the Court must take all allegations in the complaint as true. *Id.* Where however, defendant attacks the Court's subject matter jurisdiction in fact, no presumptive truthfulness attaches to plaintiff's allegations and the Court may weigh the evidence to satisfy itself that subject matter jurisdiction exists in fact. *Id.* at 891. Plaintiff bears the burden of proof that subject matter jurisdiction does in fact exist. *Id.*

Defendants here challenge jurisdiction in fact. As a result, the Court may weigh the evidence to determine whether subject matter jurisdiction in fact exists. As a federal court of limited jurisdiction, this Court, in addition, has its own independent obligation to address questions of subject matter jurisdiction. *See Meritcare Inc. v. St. Paul Mercury Insurance Co.*, 166 F.3d 214, 217 (3d Cir.1999).

### II. *Plaintiff's Claim Under 42 U.S.C. § 1981 is Barred By the Statute of Limitations*

#### A. *New Jersey's Two–Year Statute of Limitations is Applicable to Plaintiff's Claim*

The parties dispute which limitations period is applicable to Plaintiff's claims under 42 U.S.C. § 1981. Plaintiff argues that the Court should apply New Jersey's six-

year contract statute of limitations. (*See* Pl. Opp'n Br. at 3–7). Defendant argues that the Court should apply New Jersey's two-year personal injury limitations period. (*See* Def.Br. at 5–6). For the reasons set forth below, this Court finds that the applicable limitations period is New Jersey's two-year statute applicable to personal injury claims.

■ To determine the statute of limitations for a federal cause of action when the same has not been established by Congress, "the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). To promote uniformity within each State, the Supreme Court held, in *Wilson* and *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660–662, 107 S.Ct. 2617, 2620–22, 96 L.Ed.2d 572 (1987) respectively, that Section 1983 and Section 1981 claims are best characterized as personal injury actions and thus that it is proper for the District Courts to apply the forum state's limitations period governing personal injury actions to claims under §§ 1981 and 1983. Thus, New Jersey's two-year statute of limitations applicable to personal injury claims governs the timeliness of Plaintiff's Section 1981 claim.[1] *See Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1087–88 (3d Cir.1988) (affirming application of New Jersey's two-year limitations period under N.J.Stat.Ann. § 2A:14–2); *Zubi v. AT&T Corp.*, 1999 WL 334916 (D.N.J. April 6, 1999), *aff'd*, 219 F.3d 220, 222 (3d Cir.2000) ("District Court properly applied New Jer-

sey's two-year statute of limitations for personal injury claims."); *Stewart v. Rutgers*, 930 F.Supp. 1034, 1047 (D.N.J.1996), *rev'd on other grounds*, 120 F.3d 426 (3d Cir.1997) ("[a] Federal court sitting in the State of New Jersey applies New Jersey's two-year limitations period to actions brought pursuant to Sections 1981 and 1983."); *Tummala v. Merck & Co., Inc.*, 1995 WL 669220, * 11 (D.N.J. Nov.9, 1995) (two-year limitations period of N.J.Stat. Ann. § 2A:14–2 applies to Section 1981 claims). The enactment of 28 U.S.C. § 1658 did not change the settled law in this Circuit regarding limitations periods for Section 1981 cases.[2]

■ The limitations period for Section 1981 discrimination cases begins to run when the Plaintiff knows or reasonably should know that the discriminatory act occurred. *See Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (limitations period commenced to run when the allegedly discriminatory act was taken and communicated to Plaintiff); *Miller v. Beneficial Management Corp.*, 977 F.2d 834, 842–44 (3d Cir.1992); *see generally Colgan v. Fisher Scientific Co.*, 935 F.2d 1407, 1418–1419 (3d Cir.1991).

### B. *Plaintiff Cannot Plead A Continuing Violation of 42 U.S.C. § 1981*

■ Plaintiff argues in the alternative that even if the two-year limitations period applies, his claims are not barred under the continuing violation theory. The continuing violation theory, recognized by the Supreme Court in *Delaware State College*

1. The Court notes that while Plaintiff cites to Third Circuit cases applying New Jersey's six-year contract statute of limitations to claims under 42 U.S.C. § 1981, every one of those cases predates the Supreme Court's decision in *Goodman*. (*See* Pl. Opp'n Br. at 7.) Thus, none of the cases cited by Plaintiff controls here.

2. Section 1658, enacted December 1, 1990, states, "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this

section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658. In *Zubi v. AT&T Corp.*, 219 F.3d 220, 226 (3d Cir.2000), the Third Circuit held that an action brought under 42 U.S.C. § 1981 "arises under an Act of Congress enacted before December 1, 1990, and is governed by New Jersey's two year limitations period." Thus Plaintiff may not avail himself of the four-year limitations period prescribed in 28 U.S.C. § 1658.

*v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980), permits a plaintiff to prove a violation of Section 1981 by relying upon discriminatory acts that occurred outside of the limitations period, so long as the plaintiff can demonstrate that the acts constitute part of a pattern of discriminatory behavior, that occurred, in part, within the limitations period. *See West v. Philadelphia Electric Co.,* 45 F.3d 744, 754 (3d Cir.1995).

In determining whether the continuing violation theory is applicable, "[t]he crucial question is whether any present violation exists." *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). The continuing violation theory is inapplicable to "isolated instances of discrimination concluded in the past, even though the effects persist into the present." *E.E.O.C. v. Westinghouse Elec. Corp.,* 725 F.2d 211, 218 (3d Cir.1983), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). Thus, to adequately assert a continuing violation of Section 1981, for purposes of circumventing the applicable two-year limitations period, Plaintiff must first "demonstrate that at least one act occurred within the filing period." *West,* 45 F.3d at 754–55. Plaintiff must then establish that the discriminatory act or acts are "more than the occurrence of isolated or sporadic acts of discrimination." *West,* 45 F.3d at 755 (citing *Jewett v. International Tel. And Tel. Corp.,* 653 F.2d 89, 91 (3d Cir.), *cert. denied,* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981).) In other words, Plaintiff must establish that the acts complained of, both within and without the limitations period, are part of a "persistent, on-going pattern" of discrimination. *West,* 45 F.3d at 755.[3]

Plaintiff filed his initial Complaint on April 15, 1999. Thus in order to employ the continuing violation theory, Plaintiff must allege at least one discriminatory act that occurred on or after April 15, 1997. Plaintiff has failed to do so.

Plaintiff's first allegation of discriminatory conduct is his assertion that the requirement to post a bond discriminated against Plaintiff because non-minority contractors were not required to secure such bonds for similar projects. Plaintiff knew of the bond requirement and posted the bond on June 9, 1994.

Second, Plaintiff asserts that Fischer made repeated discriminatory and derogatory comments to and about Plaintiff because of his race. Plaintiff confronted Fischer about those comments in Plaintiff's January 8, 1995 letter.

Third, Plaintiff asserts that Fischer disparaged him in front of his peers, potential employers and other United workers by circulating a letter dated February 7, 1995, which discussed the agenda for an upcoming meeting. It is unclear from the Amended Complaint precisely when Plaintiff became aware of the February 7, 1995 agenda. However, it is clear that Plaintiff knew of the agenda at the latest on February 24, 1995, when Plaintiff's counsel wrote to Fischer regarding, *inter alia,* the February 7, 1995 agenda and informed Fischer that counsel intended to explore the matter further.

Fourth, Plaintiff contends that Fischer's February 22, 1995 letter was a pretext for discriminating against Plaintiff by removing Plaintiff's company from Defendant's bid list, thereby preventing Plaintiff from

---

**3.** In determining whether alleged acts of discrimination are part of a "persistent, on-going pattern" of discrimination, the Third Circuit has cited as helpful, the Fifth Circuit's non-exhaustive list of factors set forth in *Berry v. Board of Supervisors of Louisiana State Univ.,* 715 F.2d 971, 981 (5th Cir.1983). Under the *Berry* factors, "the inquiry into the existence of a continuing violation would consider: (i) subject matter—whether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanence—whether the nature of the violations should trigger the employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." *West,* 45 F.3d at 755.

bidding on lucrative contracts. At that time, Plaintiff was represented by counsel who responded to the February 22, 1995 letter. In counsel's letter of February 24, 1995, Fischer and Defendant were put on notice that Plaintiff was aware of disparaging correspondence to and from Fischer concerning LLC's performance, that Plaintiff and his counsel found the February 22, 1995 letter "strange" in light of the discriminatory comments made about Plaintiff and LLC and that Plaintiff's counsel intended to look further into Fischer's communications concerning Plaintiff and LLC.

Fifth, Plaintiff asserts that he received a response letter from Fischer, dated March 10, 1995 that stated Fischer had been misinformed and that Plaintiff would remain on Defendant's bid list. Plaintiff contends that he was indeed removed from and was not placed back on the list as Fischer had stated.

None of the foregoing allegations of discrimination occurred within the two-year limitations period, that is, on or after April 15, 1997. Plaintiff thus attempts to assert continuation of the alleged discriminatory acts through two theories. First, Plaintiff asserts that, to date, he has not received a single invitation to bid on another project with United Air Lines, despite Defendant having accepted dozens of bids for similar contracts since March 10, 1995. This argument is unavailing.

The proper focus for purposes of the limitations period is the time of the discriminatory act. *See Ricks*, 449 U.S. at 258, 101 S.Ct. at 504, 66 L.Ed.2d 431. Here, the last act was Fischer's failure to place Plaintiff back on Defendant's bid list. Nowhere in Plaintiff's Amended Complaint does he allege that subsequent to the March 10, 1995 letter something occurred that made him aware that he was not placed back on the bid list and thus he would not receive any further invitations to bid on contracts. Nor does Plaintiff assert that he followed up to assure that he was put back on the list or that he asked any representative of Defendant why he was not being invited to bid on subsequent contracts. Plaintiff simply asserts that the passage of time alerted him that he must not have been placed back on the bid list and thus he must have been subjected to discriminatory conduct. Yet, Plaintiff puts forth nothing to justify why his claim wasn't asserted in 1995, or 1996, or early 1997. Were this Court to adopt Plaintiff's position, there would be no limitations period on claims of this kind. Plaintiff had two full years from March 10, 1995 to recognize that he had not again been invited to bid on one of Defendant's contracts and to timely assert his rights.[4] This Court finds that Plaintiff knew or should have known of the alleged discriminatory conduct within that period of time. He and his counsel, who had been retained prior to February 24, 1995, had ample time to investigate whether bids for other comparable contractors were being solicited during that two-year period and whether Plaintiff was being excluded. Indeed, Plaintiff's own affidavit indicates that he knew he had a discrimination claim but had made a business decision to forego that claim. (*See* September 1999 Affidavit of Aubrey C. Lewis, Jr. ¶ 48.)

Plaintiff also argues that he did not complete the initial contract awarded to LLC until May 1997 and Defendant's discriminatory conduct thus continued by virtue of Plaintiff's continued employment until May 1997. However, the Supreme Court has made clear that "[m]ere continuity of employment, without more, is insufficient to

---

4. The assertions in his Opposition brief that "Plaintiff did not become aware of the extent of Norman Fischer's discriminatory acts against him until 1997" (Pl. Opp'n Br. at 5) and that "[o]nly recently has plaintiff come to learn that defendant has and continues to actively contact[ ] members on their bid list for various construction jobs" (Pl. Opp'n Br. at 11) are nowhere in Plaintiff's Amended Complaint nor in his affidavit. These bald assertions are simply insufficient for this Court to invoke either the continuing violation theory or equitable estoppel.

prolong the life of a cause of action for employment discrimination." *Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

Upon thorough review of Plaintiff's Amended Complaint and Affidavit in Opposition to Defendant's Motion to Dismiss, this Court finds that Plaintiff has failed to allege a single discriminatory act occurring within the two-year limitations period. Taken in the light most favorable to Plaintiff, the last act of discrimination alleged by Plaintiff occurred on March 10, 1995, when Fischer sent a letter to Plaintiff informing Plaintiff that he would remain on Defendant's bid list, when in fact, as Plaintiff alleges, he was indeed removed from and not placed back on Defendant's bid list. Having failed to meet the first prong of the continuing violation theory, no basis upon which to employ that theory here exists. Thus, Plaintiff may not avail himself of the continuing violation theory to toll the two-year statute of limitations applicable to his Section 1981 claim.[5]

### C. *Plaintiff is Not Entitled to Equitably Toll His Claim*

Plaintiff also asserts that his claim is timely because it is subject to equitable tolling. In certain cases, limitations periods in discrimination cases may be equitably tolled. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 309 (3d Cir.1983), *cert. dismissed*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The Third Circuit looks to

> "three principal though not exclusive situations where equitable tolling may be appropriate... (1)[if] the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way'

been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum."

*Kocian v. Getty Ref. & Mktg. Co.*, 707 F.2d 748, 753 (3d Cir.), *cert. denied*, 464 U.S. 852, 104 S.Ct. 164, 78 L.Ed.2d 150 (1983).

Plaintiff claims that he is entitled to invoke the doctrine of equitable tolling based upon his May 1997 conversation with Chuck Minor, an employee of Defendant allegedly sent to "smooth things out" with the Plaintiff. Plaintiff asserts that when he informed Minor, both orally and by letter dated April 27, 1997, that he was extremely dissatisfied with Defendant's discriminatory actions and was contemplating a lawsuit, Minor quickly promised Plaintiff jobs. Specifically, Plaintiff alleges that Minor told him that Defendant was happy with his work and that Plaintiff would be invited to bid on some additional projects soon. Plaintiff has not yet been invited to bid on any additional contracts.

▬ While equitable tolling does apply "where the employer's own acts or omissions have lulled the plaintiff into foregoing prompt attempts to vindicate his rights," *Meyer*, 720 F.2d at 307 (quotations omitted), it cannot properly be applied here. As earlier stated, the limitations period for the last act of alleged discrimination began to run at the latest on March 10, 1995 and as of March 10, 1997, Plaintiff's claim was no longer timely. Equitable tolling functions to halt an already running limitations period that has not yet expired; it does not function to revive a stale claim. Thus the conversation with Minor, which occurred after the limitations

---

**5.** Although it is not necessary to determine whether Defendant's alleged discriminatory acts constitute a "persistent, on-going pattern" of discrimination, Plaintiff's Amended Complaint and Affidavit in Opposition to Defendant's Motion to Dismiss allege no facts to support the contention that the alleged discriminatory acts are part of a pattern of discrimination. The Third Circuit instructs that "a court must be circumspect in relating discrete incidents to each other" and that "a careful analysis must be made before acts are considered part of a pattern." *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 484 (3d Cir.1997). It is the opinion of this Court that, even if Plaintiff had alleged a discriminatory act with the limitations period, Plaintiff's allegations speak of, at best, "isolated instances of discrimination," which would not support a continuing violation theory.

period had run, cannot breathe life into Plaintiff's already untimely claim. In short, had Plaintiff filed suit in May 1997, as he states was contemplated, his claim would have been barred by the two-year limitations period applicable to Section 1981 claims under New Jersey law.[6]

In the case before the Court, Plaintiff was aware of each of the alleged acts of discrimination, at the latest, as of March 10, 1995. At that time his counsel had already informed Defendant, through Mr. Fischer, that Plaintiff intended to "explore further the peculiar and denigrating communications" referenced in counsel's February 24, 1995 letter. Plaintiff further asserts that after receiving Fischer's March 10, 1995 letter, which informed Plaintiff that Fischer had indeed been "misinformed" and that Plaintiff would be put back on Defendant's bid list, that Plaintiff "remained skeptical" but "gave defendant the benefit of the doubt." (Am. Cmplt. ¶ 23.) Despite being represented by counsel who specifically addressed the allegations of discrimination at issue and despite Plaintiff's continued skepticism, Plaintiff did nothing until April 15, 1999— over four years later—to assert his rights. As discussed earlier, the May 1997 conversation does not revive Plaintiff's claim. Plaintiff's Section 1981 claim is barred by the two-year statute of limitations.

### III. *This Court Lacks Subject Matter on the Basis of Diversity of Citizenship*

▓▓ "It is ... well established that when jurisdiction depends upon diverse citizenship the absence of sufficient averments or of facts in the record showing such required diversity of citizenship is fatal and cannot be overlooked by the court, even if the parties fail to call attention to the defect, or consent that it may be waived." *Carlsberg Resources Corp. v. Cambria Savings and Loan Association,*

554 F.2d 1254, 1256 (1977) (citing *Thomas v. Board of Trustees,* 195 U.S. 207, 211, 25 S.Ct. 24, 49 L.Ed. 160 (1904)). In order to state subject matter jurisdiction on the basis of diversity of the parties, plaintiffs must affirmatively plead the citizenship of all parties. *See Chemical Leaman Tank Lines, Inc. v. Aetna Casualty Ins. & Surety Co.,* 177 F.3d 210, 222 n. 13 (3d Cir. 1999); *see also American Motorists Ins. Co. v. American Employers' Ins. Co.,* 600 F.2d 15 (5th Cir.1979). It is only when these facts are affirmatively pleaded that the Court can properly determine whether complete diversity of the parties in fact exists and thus whether the Court has jurisdiction to adjudicate the matter.

Here, Plaintiff's allegations are inadequate. Moreover, Plaintiff neither asserts diversity jurisdiction nor disputes Defendant's contention that Plaintiff has been repeatedly asked to correct the Amended Complaint to assert it if possible. Thus, the Court finds no basis upon which to exercise diversity jurisdiction in this matter.

### IV. *Plaintiff's State Law Claims*

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if all federal claims have been dismissed. 28 U.S.C.A. § 1367(c)(3) (West 1993). Having found that Plaintiff has failed to state a federal cause of action and as this Court lacks diversity jurisdiction to hear Plaintiff's state law claims, this Court declines to exercise jurisdiction over Plaintiff's state law claims. Thus, Plaintiff's state law claims are dismissed without prejudice for Plaintiff to refile them in New Jersey Superior Court. 28 U.S.C. § 1367(c)(3).

### CONCLUSION

For the foregoing reasons, it is on this 28th day of September, 2000, hereby

---

6. Furthermore, the Court finds that the statements allegedly made by Minor, even in the light most favorable to Plaintiff, are insufficient to find that Defendant actively misled Plaintiff in an effort to keep Plaintiff from timely asserting his rights. *See Rolo v. City Investing Co. Liquidating Trust,* 845 F.Supp. 182, 244 (D.N.J.1993).

**ORDERED** that the Motion to Dismiss of Defendant United Air Lines, Inc. be, and is hereby **GRANTED;** and it is further

**ORDERED** that Plaintiff's state law claims be, and are hereby dismissed without prejudice for Plaintiff to refile in the New Jersey Superior Court; and it is further

**ORDERED** that this case is closed.