**Slobodan MILOSEVIC, and Robin Milosevic, his wife, Plaintiffs**

v.

**Thomas RIDGE, Secretary, U.S. Department of Homeland Security, et al., Defendants**

**No. CIV.A.1:CV–03–0993.**

United States District Court, M.D. Pennsylvania.

Dec. 29, 2003.

---

Daniel M. Pell, York, PA, for Petitioners.

Daryl Ford Bloom, U.S. Attorney's Office, Harrisburg, PA, for Respondents and Thomas Marino.

Thomas Marino, United States Attorney's Office, Scranton, PA, pro se.

## MEMORANDUM

CALDWELL, District Judge.

### I.  Introduction.

Slobodan Milosevic, a citizen of Serbia subject to a final order of removal that would return him to his native country, has filed a counseled, amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking an order requiring the Board of Immigration Appeals (Board) to reopen his appeal of the removal order so that he can adjust his status on the basis of his marriage to an American citizen, the marriage occurring after the Board had denied his appeal.[1]

To clear the way for such an order, Petitioner must remove the statutory bar to adjustment of status when an alien does not voluntarily depart the United States when directed to do so. To this end, Petitioner raises equal-protection and due-process challenges to the Board's position that a motion to reopen a Board decision does not toll the period within which the alien must depart. Petitioner also claims that his former counsel was ineffective for filing a motion to reopen an agency decision, not realizing the decision had not dealt with Petitioner's marital status.

The petition will be denied.

### II.  Background.

Petitioner is an ethnic Serb who is a native and citizen of Serbia, which used to be a part of the former Yugoslavia. He entered the United States as a nonimmigrant visitor for pleasure on January 25, 1992, and overstayed his visa.[2] (Doc. 5, ex. C, p. 2).

On September 3, 1997, the INS issued a Notice to Appear which alleged that Petitioner was removable under 8 U.S.C. § 1227(a)(1)(B), INA § 237(a)(1)(B), because he had remained in the United States beyond March 23, 1992, without authorization. (Doc. 5, ex. A). Petitioner conceded he was removable and applied for asylum, withholding of removal, or in the alternative, voluntary departure. (Doc. 5, ex. C, p. 2). Petitioner maintained that he would be imprisoned upon

---

1.  Milosevic's wife is also named as a petitioner, but we will refer only to Milosevic in this memorandum.

2.  In both his original and amended petitions, Milosevic alleges he is a legal permanent resident, but the record reflects otherwise.

his return to the former Yugoslavia because he had fled to Austria in the spring of 1991 rather than be conscripted into military service.

The immigration judge concluded that there was no reasonable possibility of Petitioner's punishment if deported. Consequently, on February 12, 1999, he denied the applications for asylum and withholding of removal. However, the immigration judge granted Petitioner's request for voluntary departure for the maximum amount of time permitted, which was sixty days from the date of the order. *See* 8 C.F.R. § 240.26(e)(2003).

Still represented by former counsel, Petitioner appealed to the Board, which on August 21, 2002, affirmed the immigration judge's decision and permitted Petitioner to voluntarily depart from the United States within thirty days of its order of affirmance, or within any extension granted by the INS district director. (Doc. 5, exhibit D). The Board's decision also advised Petitioner, in pertinent part, that failure to voluntarily depart would make him ineligible for relief for ten years under 8 U.S.C. § 1255(a), which authorizes (among other adjustments of status) adjustment of status for marriage to a United States citizen.

Former counsel then sent two letters to the INS district director, seeking an extension of the departure period. By letter, dated September 20, 2002, (doc. 11. ex. C, first page), the last day of the departure period, former counsel requested deferred departure for Milosevic and also indicated a stay of removal would be filed, although there is no evidence in the record that such a stay was sought (at least not by former counsel). By letter, dated October 11, 2002, former counsel requested that the district director confer the status of "Deferred Action" on Petitioner.[3] (*Id.*, second page). There is no indication that the INS took any action in regard to these letters.

On October 30, 2002, Petitioner's wife, Robin Leslie Bastardi–Milosevic, filled out a Petition for Alien Relative (Form I–130) to obtain a visa for her husband. (Doc. 11, ex. B).[4] The Form stated that they were married on October 22, 2002. *Id.* Agency records indicate the Form was received on November 26, 2002. (Doc. 6, ex. C).

On January 27, 2003, the INS sent Petitioner a letter informing him that a "petition/application" he had filed, identified under "File Receipt Number EAC0227753189," had been denied as abandoned because Petitioner had failed to supply information requested within the allowable time period. On February 27, 2003, Petitioner's former counsel, thinking that the agency had denied the Form I–130 visa application, filed a motion with the INS to reopen, attaching proof of Petitioner's marriage. (Doc. 1, ex. C).[5]

---

3. "Deferred Action" refers to the agency's "willingness to choose not to deport based on humanitarian reasons or for its own convenience." *DeSousa v. Reno,* 190 F.3d 175, 182 (3d Cir.1999).

4. Generally, when a United States citizen marries an alien, the citizen can file a Form I–130 application to have a spouse classified as an immediate relative. *See* 8 U.S.C. §§ 1154 (establishing petitioning procedure) and 1151(b)(2)(A)(i) (defining immediate relative to include citizen's spouse). Once classified as such, the alien may then apply under a separate procedure for an adjustment of immigration status, to change the alien's status to that of lawful permanent resident, as authorized by section 1255(a). *See also Sabhari v. Reno,* 197 F.3d 938, 943 (8th Cir.1999) (discussing an alien's adjustment of status following marriage to a United States citizen).

5. Contrary to Respondents' implication in their response to the original petition (doc. 5, p. 4 n. 4), this proof included evidence of a duly executed marriage license, not just a marriage application.

In the meantime, still represented by former counsel, Petitioner filed with the Board a motion to reopen the removal proceedings against him on November 19, 2002, the last day of the ninety-day period for doing so. *See* 8 C.F.R. § 3.2(c)(2)(2003). (Doc. 1, ex. A, fourth page). We do not have the motion before us, but we will assume, as the parties do, that the motion requested reopening based on Petitioner's marriage justifying an adjustment of his status. We will also assume, as the parties do, that at some point it was represented to the Board (erroneously) that the Form I–130 application had been denied but that a motion to reopen the application was pending.

In July 2003, the Board denied Petitioner's motion to reopen the removal proceedings because he had not shown a prima facie eligibility for reopening for adjustment of status, relying (mistakenly) on the denial of the Form I–130 on the basis of abandonment.[6] The Board recognized that there was a pending motion to reopen but "unless and until the DHS decision is reversed, the respondent has failed to establish prima facie eligibility for adjustment of status." (Doc. 5, ex. F). This denial was sent to Petitioner's current counsel.

In fact, the Form I–130 application had not been denied on January 27, 2003; it was, and still is, pending.[7] The application

that had been denied on that day, identified by its receipt number in accord with agency practice, was Petitioner's application for work authorization.[8]

Milosevic did not voluntarily depart the United States by the September 20, 2002, deadline for doing so (thirty days from the date of the Board's affirmance of the removal order), and he is now an ICE detainee at the York County Prison, York, Pennsylvania, whose removal we stayed pending our resolution of his 2241 petition.[9]

The problem he now faces is that the mere filing of a motion to reopen with the Board does not toll the period for voluntary departure while the motion is pending. *See In re Shaar*, 21 I. & N. Dec. 541, 1996 WL 426889 (BIA 1996) (en banc), *aff'd, Shaar v. INS*, 141 F.3d 953 (9th Cir.1998). Further, as noted, there is a statutory ten-year bar for seeking adjustment of status if the alien does not voluntarily depart when permitted to do so by the Board. *See* 8 U.S.C. § 1229c(d). The consequence for Milosevic is that while his marriage might have allowed him to remain in the country as a legal permanent resident, he now appears barred from seeking such adjustment for the next ten years.

Milosevic instituted these habeas proceedings to adjudicate the validity of that bar. Petitioner's amended 2241 petition makes the following claims.[10] First, the

---

**6.** The exact date of the denial is uncertain; the date appears to have been only partially stamped on the denial, but the exact date is not material.

**7.** If the public website can be trusted. See note 8 below.

**8.** We note, however, that if one checks the status of this work application at the public website, the last activity listed is the government's request for more information, even though the application had already been denied, and a motion to reopen filed (albeit mistakenly directed to the Form I–130).

**9.** On March 1, 2003, the functions of the INS were taken over by the new Department of Homeland Security (DHS). Within DHS, the Bureau of Immigration and Customs Enforcement (known as "ICE") now has the duties of enforcing immigration law within the borders of the United States.

**10.** Petitioner's original 2241 petition was filed on the mistaken belief that the Form I–130 had been denied. After Respondents filed supplemental documents giving the correct procedural history, Petitioner filed a motion, which was granted, to file an amended 2241

Board's position that a motion to reopen does not toll the period of voluntary departure violates the Due Process Clause of the Fifth Amendment because, unlike a motion to reopen, an appeal to the Board does toll the departure period, and there is no rational reason for distinguishing between an appeal and a motion to reopen since both are procedural avenues aimed at bringing meritorious claims before the agency. Second, the Board's tolling position violates the equal-protection component of the Fifth Amendment because one alien may have his motion to reopen decided before the departure period expires simply by chance while another, like Petitioner, would be forced to leave the country if the Board does not address his motion before the departure deadline. Third, former counsel was ineffective in not recognizing that the January 27, 2003, denial was for a work application, not the Form I–130 visa application. As we read the petition, this (apparently) prejudiced Petitioner because the time for filing with the Board a motion to reopen on the correct factual basis has now expired and, in any event, former counsel used up Petitioner's one motion to reopen allowed to him as of right. Finally, Milosevic also makes a nonconstitutional claim, one under the Administrative Procedure Act (APA). *See* 5 U.S.C. §§ 701–706. This claim duplicates the equal-protection and due-process claims set forth above and seeks "an adjudication" that those rights were violated by the Board's position that a motion to reopen does not toll the period for voluntary departure. (Doc. 11, ¶ 35).

As relief, Petitioner requests: (1) a remand to the Board directing it to reopen Petitioner's case so that he can adjust his status; (2) tolling of the period for voluntary departure up to and including the date the Board reopens Petitioner's case; and (3) a stay of removal "until all proceedings are complete." (*Id.*, ¶¶ 29 and 36).

In opposition, Respondents make the following arguments. First, since the Form I–130 application is still pending, Petitioner has not exhausted his administrative remedies, and the petition should therefore be dismissed. Second, Petitioner's equal-protection claim fails because he did not file his motion to reopen with the Board until November 19, 2002, two months after the period of voluntary departure expired on September 20, 2002. Third, the equal-protection and due-process claims are merely "thinly guised attempt[s] to ask the District Court to rewrite the law." (Doc. 12, p. 4). Fourth, the claim for ineffective assistance of former counsel fails because Petitioner has not shown that he has complied with the requirements of *In re of Lozada*, 19 I. & N. Dec. 637, 1988 WL 235454 (BIA 1988), for presenting such a claim nor has he provided details of counsel's ineffectiveness. In further support, Respondents note that Petitioner and his wife could have determined the true status of the Form I–130 application by checking the agency's public website themselves. Fifth, Petitioner's invocation of 28 U.S.C. § 1331 to establish our jurisdiction is incorrect since section 1331 is inapplicable to habeas proceedings, citing *Sabhari v. Reno*, 197 F.3d 938 (8th Cir.1999).

## III. *Discussion.*

### A. *Exhaustion.*

■ "A court may review a final order of removal only if ... the alien has exhausted all administrative remedies available to the alien as of right...." 8 U.S.C. § 1252(d)(1). Section 1252(d)(1) applies not only to "judicial" review by way of direct appeal to the court of appeals but also to "habeas" review in the district

petition modifying his claims in light of that history.

court, *Duvall v. Elwood,* 336 F.3d 228, 232 (3d Cir.2003), and its exhaustion requirement is jurisdictional, eliminating a district court's power to adjudicate a habeas petition seeking review of a removal order if a petitioner has failed to exhaust avenues of relief available administratively. *Id.*

■ Respondents argue, without elaboration or citation to authority, that jurisdiction is lacking here because the Form I-130 application filed by Petitioner's wife is still pending before the agency and hence unexhausted. We disagree because this argument ignores the gravamen of the petition and the pertinent background.

Milosevic is subject to a final order of removal. On appeal, the Board affirmed that order and then, after the period of voluntary departure expired, refused to grant a motion to reopen the removal proceedings on the ground that the agency had not yet reversed its decision on the marriage application (a refusal based on the erroneous information the Board had at the time). Petitioner's claims are that the Board's policy of not tolling the period of voluntary departure while a motion to reopen is pending violates due process and equal protection. In this context, there is nothing left for Milosevic to exhaust. *See Stewart v. U.S. Immigration And Naturalization Service,* 181 F.3d 587, 593 (4th Cir.1999) (final order of deportation has traditionally included a Board denial of a motion to reopen the deportation proceedings).

■ This does not end the jurisdictional inquiry, however, because we have an inde-pendent duty to examine our own jurisdiction. *See Nesbit v. Gears Unlimited, Inc.,* 347 F.3d 72, 76–77 (3d Cir.2003); *see also Duvall, supra,* 336 F.3d at 230 n. 1 (government's failure to argue lack of jurisdiction did not justify district court's assumption of jurisdiction since "subject matter jurisdiction can never be waived"). In doing so, we note that Petitioner never presented his constitutional claims to the Board, but that this does not preclude jurisdiction.

■ Generally, an alien must exhaust remedies on particular claims as well as the process itself, and the failure to do so deprives a court of jurisdiction to entertain that claim. *See Alleyne v. United States Immigration and Naturalization Service,* 879 F.2d 1177, 1182 (3d Cir.1989); *see also Miah v. Ashcroft,* 346 F.3d 434, 439 n. 2 (3d Cir.2003) ("This Court may not consider particular questions not raised in an appeal to the Board.")(citing *Alleyne* ).[11] However, there is an exception to exhaustion for constitutional or statutory claims which the Board can neither consider nor correct. *See Sewak v. INS,* 900 F.2d 667, 670 (3d Cir.1990).

■ Here, Petitioner is making constitutional challenges to the Board's policy of not tolling the period of voluntary departure while a motion to reopen is pending. *See* 8 C.F.R. § 3.2(f)(2003).[12] Milosevic did not have to exhaust these claims before the Board. *See Farhoud v. INS,* 122 F.3d 794, 796 (9th Cir.1997)(exhaustion is not required for a constitutional challenge to the immigration statute or the agency's procedures).

---

11. *Alleyne* and *Miah* dealt with petitions for review to the court of appeals and not a habeas petition. Nonetheless, since *Duvall* has extended the exhaustion requirement to habeas cases when a petitioner failed to exhaust the administrative process, we see no reason why *Alleyne* and *Miah* should not also apply to failure to exhaust particular claims before the Board.

12. In pertinent part, section 3.2(f), captioned "stay of deportation," provides that the filing of a motion to reopen does "not stay the execution of any decision made in the case" and that any such stay must be specifically granted by the Board or other appropriate immigration official.

■ We also conclude that we have jurisdiction over Milosevic's claim that his former lawyer was ineffective in not recognizing that the January 27, 2003, denial was for a work application, not the Form I–130 visa application. This apparently prejudiced Petitioner because, in his view, the time for filing a motion to reopen before the Board on the correct factual basis has now expired and, in any event, former counsel wasted Petitioner's one motion to reopen as of right. *See* 8 C.F.R. § 3.2(c)(2)(2003) (in pertinent part, providing that "an alien may file only one motion to reopen removal proceedings . . .").

■ This claim was never presented to the Board, but it has not been waived because Petitioner did not know about it until after the Board had denied the motion to reopen. *See Sewak, supra,* 900 F.2d at 671. Additionally, Petitioner still has an administrative remedy available; he can move the Board to reopen the proceedings under its sua sponte power to do so. *See* 8 C.F.R. § 3.2(a); *see also Gaur v. Ashcroft,* 65 Fed. Appx. 773, 776 (3d Cir.2003)(nonprecedential).[13] However, this remedy is discretionary with the Board, *Gauer, supra,* 65 Fed.Appx. at 776, and as a discretionary remedy, it does not preclude our jurisdiction. *See Hernandez v. Reno,* 238 F.3d 50, 55 (1st Cir.2001)(cited in *Gaur* ). Depending on the circumstances, we may entertain the claim or require Milosevic to return to the Board. *Id.* Because Petitioner faces imminent removal, we will consider the claim on the merits. *Id.*

We see no other jurisdictional issues and therefore proceed to the merits.

### B. *The Ineffectiveness Claim.*

■ "Immigration proceedings . . . are civil, rather than criminal in nature; therefore the Sixth Amendment guarantee of effective counsel does not attach." *Xu Yong Lu v. Ashcroft,* 259 F.3d 127, 131 (3d Cir.2001). "Nonetheless, petitioners in deportation proceedings enjoy Fifth Amendment Due Process protections" against attorney ineffectiveness. *Id.* (citations omitted). Attorney ineffectiveness that violates an immigrant's due process rights is conduct that prevents an alien from reasonably presenting his case or that makes the proceedings fundamentally unfair. *Id.* In other words, the petitioner must show prejudice. *See Ponce–Leiva v. Ashcroft,* 331 F.3d 369, 377 (3d Cir.2003).

■ Milosevic cannot show prejudice from former counsel's conduct. Even if his counsel had argued correctly in connection with the motion to reopen before the Board that the Form I–130 application was still pending, rather than erroneously asserting that it had been denied but a motion to reopen was pending before the agency, the result would have been the same. Based on its precedent, the Board would have still denied the motion to reopen, albeit for a different reason, because the Form I–130 was still pending and unadjudicated. *See In re Velarde–Pacheco,* 23 I. & N. Dec. 253, 2002 WL 393173 (BIA 2002)(en banc) (discussing and modifying *In re Arthur,* 20 I. & N. Dec. 475, 1992 WL 195807 (BIA 1992), and *In re H–A–,* 22 I. & N. Dec. 728, 1999 WL 325675 (BIA 1999) (en banc)). We therefore reject the ineffectiveness claim.

### C. *The Due–Process and Equal–Protection Claims That the Period Of Voluntary Departure Should Be Tolled While a Motion to Reopen Is Pending.*

■ Petitioner claims his due-process and equal-protection rights were violated

---

**13.** Recently, the Board stated that it recognizes that it can consider a claim of attorney ineffectiveness under its sua sponte power to reopen a case. *In re Assaad,* 23 I. & N. Dec. 553, 555 n.4, 2003 WL 327497 (BIA 2003) (en banc).

because his period of voluntary departure was not tolled while his motion to reopen was pending before the Board. In opposition, Respondents make two short arguments. First, Petitioner has no equal-protection claim because he did not file his motion to reopen with the Board until November 19, 2002, two months after the period of voluntary departure expired on September 20, 2002. Second, the equal-protection and due-process claims are merely "thinly guised attempt[s] to ask the District Court to re-write the law." (Doc. 12, p. 4).

We believe Respondents' first opposition argument is dispositive of both constitutional claims. Even if we accepted Petitioner's argument that the motion to reopen before the Board should toll the period for voluntary departure, that motion, while timely filed on November 19, 2002, was filed after the departure period expired on September 20, 2002. The motion cannot toll a deadline that has already expired. *Cf. Curtiss v. Mount Pleasant Corr. Facility,* 338 F.3d 851, 853 (8th Cir.2003)(state postconviction petition did not toll one-year limitations period for filing federal habeas petition when the state petition was filed after the federal limitations period expired); *Lewis v. United Air Lines, Inc.,* 117 F.Supp.2d 434, 441 (D.N.J.2000)("Equitable tolling functions to halt an already running limitations period that has not yet expired; it does not function to revive a stale claim.").

Petitioner's attempt to extend the period of voluntary departure on September 20, 2002, does not assist him. That letter request, which the agency did not respond to and which was made on the last day Milosevic was supposed to depart, would not automatically toll the time for departure or extend it. *Cf.* 8 C.F.R. § 240.26(f)(2003)(placing authority to extend departure deadline with the district director and two other immigration officials). Additionally, the agency "had no statutory or regulatory obligation to respond" to Petitioner's request for an extension. *See Mardones v. McElroy,* 197 F.3d 619, 624 (2d Cir.1999). Moreover, since the request was made on the last day for departure, "it was highly unlikely that the INS would be able to respond prior to the deadline even were it inclined to do so." *Id.* Neither does Petitioner's October 11, 2002, request for deferred action assist him. This request was directed at allowing him to remain in the United States despite his removability, not at extending the departure period.[14]

Thus, we need not decide the constitutional issues, but we note that Petitioner's claims do find approval in the dissent in *Shaar v. INS,* 141 F.3d 953 (9th Cir.1998). In that case, on statutory grounds, the majority refused to toll the voluntary departure date from the date the motion to reopen was filed and thus affirmed the Board's refusal to reopen the aliens' deportation proceedings, which was made on the basis that the aliens, having failed to depart by their voluntary-departure deadline, were barred from seeking adjustment of status under the predecessor to 8 U.S.C. § 1229c(d).

The dissent disagreed, believing that the majority's rule was irrational because it treated a motion to reopen differently from a direct appeal to the Board for no good reason, 141 F.3d at 960 (the basis of Milosevic's due-process claim), and that it violated equal protection because while two immigrants may file a motion to reopen on the same date, one alien may have

---

14. Petitioner also points to his May 2, 2003, letter to the district director, (doc. 11, ex. C, fourth page), but that was a request for supervised release pending removal, not a request to extend the departure period.

his decided before he must depart while another may not for reasons unrelated to the merits, *id.* at 961–62 (the basis of Milosevic's equal-protection claim).

Nonetheless, we do not think that even the *Shaar* dissent can help Petitioner here. In *Shaar,* the aliens filed their motion to reopen before the expiration of the departure period. The dissent might have had a different view if, as here, the motion had been filed after the departure deadline had been violated. For example, in *El Himri v. Ashcroft,* 344 F.3d 1261, 1262 (9th Cir. 2003), the Ninth Circuit held that it had jurisdiction to consider a motion to stay an immigrant's voluntary-departure deadline pending the outcome of the immigrant's appeal from an adverse Board decision to the court of appeals. The court noted, however, that it was not deciding whether it may toll the period if the motion to stay departure was filed after the expiration of the voluntary-departure period. 344 F.3d at 1263 n. 2.

Other facts in this case also counsel against granting the writ. The sole basis of Petitioner's right to remain in the United States is his marriage to a United States citizen.[15] However, the marriage occurred on October 22, 2002, two months after the Board denied Milosevic's appeal based upon his fear of persecution in the former Yugoslavia, and about a month after Petitioner was supposed to have voluntarily departed the country. In these circumstances, even though Petitioner's motion to reopen was timely, it appears that Milosevic should have obeyed the immigration laws and departed. Understandably, he preferred to remain in the United States, but given the sequence of events, he could have, and should have, gone to Serbia and sought adjustment of status from there.

In *Tuadles v. INS,* 83 Fed.Appx. 874 (9th Cir.2003)(nonprecedential), and *Singh v. Quarantillo,* 92 F.Supp.2d 386 (D.N.J. 2000), the courts did not enforce the statutory bar on adjustment of status when an immigrant failed to depart by the departure deadline. In both cases, however, the factual background was significantly different from the instant one.

In *Tuadles,* an application for a visa and a motion to reopen removal proceedings were filed on behalf of an immigrant, both based on her marriage, "less than a month after her marriage occurred and months before her scheduled departure date." 83 Fed.Appx. at 877. The Board denied the motion to reopen based on the statutory bar for aliens who fail to depart, even though by the time the Board made its decision the alien's visa application had been approved. Reversing, the Ninth Circuit held that the Board's action violated due process because the immigrant had been "deprived of a meaningful hearing on her motion to reopen through no fault of her own." *Id.* The court distinguished *Shaar* because in that case the aliens had filed their motion to reopen only days before they were supposed to depart and did not seek an extension of their departure deadline. *Id.,* citing *Shaar,* 141 F.3d at 957–59.[16]

In *Singh* the immigrant had married while his appeal to the Board was pending and within a month of the marriage, on November 7, 1997, a visa application and

---

**15.** Milosevic did not petition for review in the Third Circuit after the Board denied his appeal contesting the immigration judge's rulings that he was not entitled to asylum or withholding of removal, nor did he present any grounds here cognizable in habeas to challenge those rulings.

**16.** It also appears that the Shaars' basis for contesting removal was available to them some three months before they filed their motion to reopen. *Shaar,* 141 F.3d at 955.

an application for adjustment of status had been filed. About seven months later, the Board denied the appeal. Within a month, the immigrant filed a motion to reopen based on his pending applications. Relying on its usual position, on January 13, 1999, the Board denied the motion to reopen because the visa application, still pending after about a year and three months, had not yet been approved. The alien did not receive notice of this decision until after the time for petitioning for review with the court of appeals had expired. He then filed a motion for reconsideration with the Board and a stay of deportation. The immigrant was taken into custody for failing to depart by his departure deadline. He filed a habeas petition. The district court granted it on the basis that the period for departure had been tolled by the filing of the visa and status-adjustment applications, reasoning that:

> [T]olling is required in the present case to preserve ... petitioner's statutory right to pursue a visa petition and adjustment of immigration status. By simply sitting on these applications (as the INS has done since November 1997) and failing to provide a hearing the INS has effectively deprived petitioner of any relief. Absent a tolling requirement there are serious due process concerns.

92 F.Supp.2d at 393.

There is one factual circumstance present here that distinguishes this case from *Tuadles* and one circumstance absent that distinguishes it from *Singh*. Unlike *Tuadles*, Milosevic's motion to reopen was filed about a month after the departure deadline, not months before the deadline. Unlike *Singh*, the agency had not sat on the visa application for over a year by the time the motion to reopen had been denied (and

over two and one-half years by the time of the court's decision).

Thus, given that Petitioner had married after the Board had denied his direct appeal, we believe there are no constitutional grounds for relieving him from the statutory bar against adjustment of status for aliens who refuse to comply with their voluntary-departure deadline. The bar has been enforced against other aliens in similar circumstances seeking adjustment of status based on marriage. *See Rojas–Reynoso v. INS*, 235 F.3d 26 (1st Cir.2000); *Stewart, supra*, 181 F.3d 587; *Games–Andino v. INS*, 66 Fed. Appx. 702 (9th Cir.2003)(nonprecedential).

We will issue an appropriate order.[17]

## ORDER

AND NOW, this 29th day of December, 2003, upon consideration of the amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, it is ordered that:

1. The petition (doc. 11) is denied.

2. The stay of Petitioner's removal or deportation (doc. 3) is vacated.

3. The Clerk of Court shall close this file.

---

17. Petitioner also presented a claim under the Administrative Procedure Act (APA), citing 5 U.S.C. § 702, and seeking judicial review as a person aggrieved by agency action. Assuming jurisdiction under the APA, we reject this claim because it simply reiterates the equal-protection and due-process claims discussed above.